## FITZPATRICK, ADMINISTRATOR *v.* OWENS.

### Opinion delivered May 29, 1916.

1. HUSBAND AND WIFE—ACTION BY WIFE AGAINST HUSBAND FOR TORT.— A married woman, under Acts of 1915, p. 684, entitled, "An act to remove the disabilities of married women in the State of Arkansas," may maintain against her husband an action to recover damages for tort committed by him against her, and resulting in her injury.

2. TORTS—INJURY TO WIFE BY HUSBAND—DEATH OF WIFE—ACTION BY HER ADMINISTRATOR AND NEXT OF KIN.—After a husband and wife were divorced from bed and board, the husband killed the wife. The wife's administrator and next of kin brought an action against him for damages. *Held*, a judgment of the trial court, sustaining a demurrer to the complaint was erroneous, and would be reversed.

Appeal from Phillips Circuit Court; *J. M. Jackson,* Judge; reversed.

*Bevens & Mundt* and *Hughes & Hughes* for appellant.

1. Mrs. Owens, if she had lived, would have been entitled to maintain an action for damages. Kirby's Digest. § 6289; Cont. Art. 9. § 7; Acts April 28, 1873, March 19, 1895, and March 19, 1915; 93 Ark. 42. On her death the right to sue vested in appellants. *Ib.* She had

the right to sue her husband for tort. 88 Conn. 42; 89 Atl. 889; 52 L. R. A. (N. S.) 185; 140 Pac. 1022, 52 L. R. A. (N. S.) 189; 154 S. W. (Tex.) 322. Appellants have the same right under § 6289 Kirby's Digest.

Also review the various married women's acts and decisions of this and other states and contend that the act removes all disabilities to sue for torts, citing many authorities.

*Moore, Vineyard & Satterfield, Andrews & Burke* and *Fink & Dinning* for appellee.

If the deceased had survived she could not have maintained this action for damages in tort and hence the administrator and heirs cannot. The action did not survive because she had none. Acts 1915. Act 159, p. 694; Kirby's Digest. § 6289, 6288, etc.; 21 Cyc. 1528; 77 Am. Dec. 72; 44 Ark. 265; 82 *Id.* 247; 20 L. R. A. 525; 102 Ark. 460; 156 Cal. 32; 42 Iowa 182; 42 Barb. 641; 44 *Id.* 367; 48 N. Y. Supp. 25; 43 Am. Rep. 589; 65 Tex. 281; 112 S. W. 422; 177 S. W. 382; Cooley on Torts (3 ed.) 477 and notes; 218 U. S. 611; 177 S. W. 628.

As opposed there are only two cases from Connecticut and Oklahoma. See also 179 S. W. (Mo.) 628.

McCULLOCH, C. J. According to the allegations of the complaint, plaintiff's intestate, Henrietta Owens, was the wife of the defendant, F. M. Owens; and said parties had, by a decree of the Chancery Court of Phillips County, Arkansas, been divorced from bed and board but not from the bonds of matrimony; that while the said relation subsisted, the defendant made a felonious assault upon said Henrietta Owens and killed her; and that by reason of said wrongful act of defendant the estate of said decedent and her next of kin suffered injury which entitled them to recover damages in the large sum named in the complaint. The court sustained a demurrer to the complaint and dismissed the action on the ground that a right of action on the part of either the administrator or next of kin was not set forth. In test-

ing the sufficiency of the complaint, we must, of course, accept as true all the allegations set forth.

(1-2)    The action is based on the statute which provides as follows: "Whenever the death of a person shall be caused by wrongful act, neglect or default, and the act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, then, and in every such case, the person who, or company or corporation which, would have been liable if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to a felony." Kirby's Digest, section 6289.

This court construed that statute, not as a continuation of the right of action which the deceased had in his lifetime, but as arising by the preservation of the cause of action which was in the deceased, and that if the latter never had a cause of action none accrues to his representatives or next of kin. *Davis v. Railway,* 53 Ark. 117.

The question then for determination is the one stated by the appellant in the brief, whether or not a married woman, under the statute now in force in Arkansas, may maintain against her husband an action to recover damages for tort committed by him. The cause of action, if any exists, arose since the enactment of a statute by the General Assembly of 1915 entitled "An Act to remove the disabilities of married women in the State of Arkansas," and reads as follows: "Section 1. That from and after the passage of this Act, every married woman and every woman who may in the future become married, shall have all the rights to contract and be contracted with, to sue and be sued, and in law and equity shall enjoy all rights and be subjected to all the laws of this State, as though she were a *femme sole.*" Acts of 1915, p. 684.

It is difficult to find authority bearing upon the construction of this statute, for there are no statutes in other states in precisely the same language, or enacted under the same circumstances as this statute was passed. The disposition of all the courts, in the construction of statutes relating to the rights of married women, is to hold tenaciously to the rule that stautes in derogation of the common law must be strictly construed. This court has announced that rule in many cases and has given it effect in confining within the narrowest possible limits statutes passed by the Legislature to emancipate married women from their common law disabilities. There are many cases cited on the brief construing statutes of this kind, and in most of the decisions the statutes were held not to give a married woman the right to maintain an action against her husband for tort. But, as before stated, none of the statutes are similar to ours nor were they passed under the same circumstances. One of the leading cases on the subject is that of *Thompson* v. *Thompson,* 218 U. S. 611, where the court decided that the statute of the District of Columbia declaring that married women "shall have power to engage in any business, and to contract, whether engaged in business or not, and to sue separately upon their contracts, and also to sue separately for the recovery, security, or protection of their property, and for torts committed against them, as fully and freely as if they were unmarried," did not confer upon the wife the right to sue her husband for damages on account of tort committed by him.

In reaching that conclusion, the court said that "It is apparent that its purposes, among others, were to enable a married woman to engage in business and to make contracts free from the intervention and control of her husband, and to maintain actions separately for the recovery, security and protection of her property," and to sue separately for torts as freely as if she were not a married woman, but that the statute "was not intended to give a right of action as against the husband, but to

allow the wife, in her own name, to maintain actions of tort which at common law must be brought in the joint names of herself and husband.'' The case was decided by a divided court, there being a dissenting opinion by Mr. Justice Harlan in which Justices Holmes and Hughes concurred. The statute then under consideration was not as strong in the enlargement of the rights of married women as the one passed in this State, but the opinion of the court undoubtedly shows the tendency of the court, at least at that time, to restrict as far as possible those statutes and to only follow the legislative will as expressed in the most irresistible language in enlarging the rights of married women.

There are statutes in many States enlarging the rights of married women to contract and to maintain suits both upon contract and for tort the same as that given by law to the husband, and those statutes have uniformly been construed to give no greater rights than the husband had, and that therefore the right to maintain an action for tort was not conferred for the reason that the husband had no such right. *Strom* v. *Strom,* 98 Minn. 427, 6 L. R. A. (N. S.) 191; *Shultz* v. *Christopher,* 65 Wash. 496, 118 Pac. 629, 38 L. R. A. (N. S.) 780; *Drum* v. *Drum,* 69 N. J. L. 557; *Rogers* v. *Rogers* (Mo.), 177 S. W. 382.

In other States where there are statutes authorizing the wife to contract, either with her husband or with others, and providing that she may sue or be sued alone, the courts have construed those statutes to refer solely to contractual rights, and to provide a remedy merely for the enforcement of those rights. *Peters* v. *Peters,* 156 Cal. 32; *Main* v. *Main,* 46 Ill. 106; *Bandfield* v. *Bandfield,* 117 Mich. 80, 40 L. R. A. 758.

In still other States, statutes somewhat similar are held merely to give the right to sue upon causes of action which existed at common law, and not to otherwise enlarge the common law rights of a married woman. *Peters* v. *Peters,* 42 Ia. 142; *Abbott* v. *Abbott,* 67 Me. 304; *Freethy* v. *Freethy,* 42 Barb. (N. Y.) 641.

Counsel for appellee rely, with much apparent confidence, on the decision of the Supreme Court of Tennessee in the case of *Lillienkamp* v. *Rippetoe,* 179 S. W. (Mo.) 628, but we think that decision has little if any bearing on the construction of the statute now before us. In that case the court construed a recent enactment of the Tennessee Legislature declaring that married women "are hereby fully emancipated from all disability on account of coverture, and the common law as to the disabilities of married women and its effects on the rights of property of the wife, is totally abrogated, and marriage shall not impose any disability or incapacity on a woman as to the ownership, acquisition, or disposition of property of any sort, or as to her capacity to make contracts and do all acts in reference to property which she could lawfully do if she were not married," and that "every woman now married, or hereafter to be married, shall have the same capacity to acquire, hold, manage, control, use, enjoy, and dispose of all property, real and personal, in possession, and to make any contract in reference to it, and to bind herself personally, and to sue and be sued with all the rights and incidents thereof, as if she were not married;" and the court decided that the statute did not confer the right on the wife to sue the husband for tort. In disposing of the matter the court said: "We must assume that the Legislature had in mind in the passage of the act the fundamental doctrine of the unity of husband and wife under the common law, and the correlative duties of husband and wife to each other, and to the well-being of the social order growing out of the marriage relation, and that, if it had been the purpose of the Legislature to alter these further than as indicated in the act, that purpose would have been clearly expressed, or would have appeared by necessary implication."

All the statutes of this character do, as stated by the Supreme Court of the United States in *Thompson* v. *Thompson, supra,* "treat the wife as a *femme sole* and to a large extent to alter the common law theory of the unity

of husband and wife.'' The difficulty is that the courts, in their reluctance to change the common law rules of law and procedure, place too narrow restrictions upon the manifest designs of the lawmakers. There are two decisions brought to our attention which hold broadly, under statutes not near so strong as ours in the emancipation of married women from all common law disabilities, that the wife can sue the husband on account of torts committed by him. *Brown* v. *Brown,* 88 Conn. 42, 89 Atl. 889, 52 L. R. A. (N. S.) 185. *Fiedler* v. *Fiedler* (Okla.), 140 Pac. 1022, 52 L. R. A. (N. S.) 189. The Connecticut statute construed in the case above cited merely declared that ''all property hereafter acquired by any married woman shall be held by her to her sole and separate use,'' and that court held that giving that statute full scope each party to the marriage retains his or her legal identity and capacity to own property, and each may sue or be sued at law, not only for breach of contract, but may sue each other for a tort.

In stating the conclusions of the court, it was said: ''It is true that courts in some of the States have held that statute more or less similar to the one here in question give a married woman no right of action against her husband for a tort. They find in the statutes construed no legislative intent to change the legal status of husband and wife as regards the legal identity of the two, but simply an intent to ameliorate the condition of the wife by permitting her to retain and deal with her own property, and to contract with and sue and be sued by others than her husband. These courts generally hold that, unless there is an express provision giving her the right to sue her husband, she has no action against him upon contract or for tort. * * * If the legislative intent in such an enactment is not to change the foundation upon which the status of married persons was based at common law, namely, their legal identity, but its purpose is to empower the wife, while that status exists, to contract and sue in her own name, like a *femme sole,* it might well be held that language bestowing this right could not be

so extended as to permit her to contract with her husband or to sue him for a tort, because the statute intends that her identity shall still be merged in that of her husband.''

The court then proceeds further to hold that the effect of the statute of that State with respect to the rights of married people was that "the parties retained their legal identity and their several rights are to be determined in accordance with the status thus established," and that the wife's separate identity not being lost by her coverture it necessarily resulted from the "retention of her legal identity after coverture that she had a right of action against her husband for a tort committed by him against her and resulting in her injury."

In the Oklahoma case referred to, the court held that under the general statutes there declaring that women shall "retain the same legal existence and legal personality after marriage as before marriage, and shall receive the same protection of all her rights as a woman, which her husband does as a man," gave her the right to sue him for tort.

It is unnecessary for us, in order to sustain the right of action of the plaintiffs in the present case, to go as far as did the Oklahoma case, because that case is in conflict with the decisions in those States which hold that a statute merely enlarging the rights of married women to those of the husband do not give her the right to sue for torts. Our statute must be construed in the light of previous legislation in this State, which had already gone very far towards complete emancipation of a married woman from all the common law disabilities of coverture. Those statutes provided that married women could own property of any kind, and hold the same in their own right, and convey it as a *femme sole;* that she could enter into contracts with reference to her separate property, and sue and be sued with reference thereto. The Act of 1873 provided that "any married woman may bring and maintain an action in her own name for or on account of her sole and separate estate or property, or for damages against any person or body corporate, for any

injury to her person, character or property, the same as if she were sole." Another statute conferred upon married women the power to enter into executory contracts for the sale of her lands. Act of March 19, 1895, Kirby's Digest, sec. 5209; *Sparks* v. *Moore,* 66 Ark. 437. After this court had decided in *Kies* v. *Young,* 64 Ark. 381, that. the husband was liable for the ante-nuptial obligations of his wife, the Legislature changed that rule, thus indicating the further desire to preserve the separate identity of the wife. Act of February 1, 1899, Kirby's Digest, sec. 5223.

These enactments left but little in the way of restrictions upon the rights of married women, but the Legislature deemed it proper to provide further legislation to completely emancipate her, and they did so by this statute which declares its purpose in the broadest terms to "remove the disabilities of married women." An analysis of the language of the statute shows that the Legislature meant to. complete the work of emancipation and to give married women all the rights and remedies possessed by unmarried women. The words "to sue and be sued," when considered by themselves, merely enlarge the remedies of a married women and do not enlarge her rights, but in considering the significance of those words we must do so in connection with the words which precede and which follow, and undoubtedly the use of those words serves to give a remedy for all the rights found to have been enlarged by the preceding words and those which follow. Now, the preceding words confer, in unqualified terms, the right of the married woman "to contract and be contracted with,". and the words which follow declare in the very broadest terms her right "in law and equity" to "enjoy all rights and be subjected to all the laws of the State as though she were a *femme sole.*" If this language be given any effect at all in the light of preceding statutes enlarging the rights of the married woman, it necessarily means that a married woman is to enjoy in law and equity all the rights which she would enjoy if she still remained a single woman,

and that with respect to those rights she may sue and be sued.

The inquiry arises whether the language of the statute giving her only such rights and remedies as she would enjoy if she were a *femme sole,* necessarily excludes the right to maintain a suit against her husband for the reason that if she were a *femme sole* she would have no husband to sue, and therefore it is not intended to give her any greater right than she would have is she were a *femme sole.* We scarcely think that the lawmakers had that in mind, for they were dealing entirely with enlarged rights and remedies of a married woman, and it was evidently meant to confer upon her the enjoyment of those rights and remedies, even against her husband, the same as if she were unmarried.

We are convinced, therefore, that this was the intention of the lawmakers, and it would be doing violence to their manifest purpose to further apply the rule of restriction on account of the statute being in derogation of the common law and to hold that a married woman has no right of action against her husband. We have, as has been so often said by this and other courts, nothing to do with the policy of the law, for that is controlled entirely by its legislative branch of government. It cannot be said that there is any such fixed policy on the subject that the Legislature has not the power to change.

As to the policy of such a statute, the Connecticut court, in the case referred to, said: "The danger that the domestic tranquility may be disturbed if husband and wife have rights of action against each other for torts, and that the courts will be filled with actions brought by them against each other for assault, slander, and libel, as suggested in some of the cases cited in behalf of the defendant, we think is not serious. So long as there remains to the parties domestic tranquility, while a remnant is left of that affection and respect without which there cannot have been a true marriage, such action will be impossible. When the purposes of the marriage relation have wholly failed by reason of the mis-

conduct of one or both of the parties, there is no reason why the husband or wife should not have the same remedies for injuries inflicted by the other spouse which the courts would give them against other persons. Courts are established and maintained to enforce remedies for every wrong, upon the theory that it is for the public interest that personal differences should thus be adjusted rather than that the parties should be left to settle them according to the law of nature. No greater public inconvenience and scandal can thus arise than would arise if they were left to answer one assault with another, and one slander with another slander, until the public peace is broken and the criminal law invoked against them.''

Again it is said against this construction of the statute that it confers a greater right upon the wife than it does upon the husband. That may be true, and still the statute is in accord with previous legislation on the subject which gives the wife greater rights than the husband. It was within the power of the Legislature to give the wife new rights without conferring reciprocal rights upon the husband, and that view of it does not militate against the validity of the statute, nor does it prevent that construction being placed upon it.

Upon the whole, we are convinced from the language of this statute and the fact that it was enacted to add something more to the whole sum of the law on that subject, that the statute meant to give the wife the right to maintain an action against her husband, either upon contract or for tort. The conclusion of the circuit court was therefore erroneous, and the judgment is reversed and the cause remanded with directions to overrule the demurrer, and for further proceedings not inconsistent with this opinion.

HART, J. (dissenting). I do not think the construction placed upon the act under consideration is justified by its language, and it seems to me that the construction is opposed to the trend of our former decisions relating to the question. In the case of *Kies* v. *Young*, 64 Ark.

381, the court expressly recognizes the rule in the construction of married women acts to be that where the Legislature does not by express words or by clear implication express an intention to repeal the existing law in regard to married women, the presumption is that they intended the rule should remain.

The court said that the common law unity of husband and wife still exists in this State except so far as the legislative purpose to change it has been expressed by statute. The statute under consideration is as follows: "Section 1. That from and after the passage of this act, every married woman and every woman who may in the future become married, shall have all the rights to contract and be contracted with, to sue and be sued, and in law and equity shall enjoy all rights and be subjected to all the laws of this State, as though she were a *femme sole.*" Reliance seems to be placed in the decision of the majority in the dissenting opinion of Judge Harlan in *Thompson* v. *Thompson,* 218 U. S. 611. A statute governing the District of Columbia was under consideration in that case and it specially provided that married women might sue for torts committed against them as fully and freely as if they were unmarried, and Judge Harlan's dissent was based upon this special provision of the statute. I think that an examination of his dissenting opinion will lead to the conclusion that had it not been for this special provision, he would not have dissented from the majority opinion.

The first part of our act providing that married women shall have all rights to contract and be contracted with, to sue and be sued, I think gives her the right to make contracts with her husband as well as with third persons and to sue or be sued by him as well as others in regard to such contracts. Before the passage of the act, by the common law a husband and wife were deemed to be one person and no suit at law of any character could be maintained by one against the other in this

State. Suits between a husband and wife, however, have long been permitted in equity.

It seems to me that the object of the statute was the placing of the husband and wife upon an equal footing in regard to the making of contracts and ascertaining their rights thereunder. Under the common law the husband did not have the right to sue the wife for a tort. I do not think the language of the present statute indicates a legislative intent, "to make a departure from the common law so radical and so opposed to its general policy, as the authorization of a suit by the husband or wife against the other for injuries to the person or character." See *Peters* v. *Peters,* 23 L. R. A. (N. S.) 699. In the case of *Jackson* v. *Williams,* 92 Ark. 486, it was held that a husband was liable for a tort of the wife not committed in his presence and the ruling was based upon the unity of person in husband and wife. But it is said that no force can be given to the latter part of the section unless the construction placed upon the act by the majority opinion is adopted. It can be said with equal force that all the language preceding that is useless if the opinion of the majority is adopted because if the language of the latter part of the section is broad enough to include suits by the wife against the husband for personal torts, it is certainly broad enough to include suits by her against him on contracts, and it was entirely useless to have embodied the language used in the first part of the section in the statute. It is our duty to give force and effect to every part of the statute if we can do so without doing violence to its language. I think the first part of the section gives the wife the right to contract and be contracted with by her husband and that the words sue and be sued have relation to such contracts; and that the latter part of the section which provides that "in law and equity shall enjoy all the rights and be subject to the laws of this State as though a *femme sole*" were intended to remove the rigor of our former rule in regard to making the husband liable for

torts of his wife not committed in his presence, and other matters of that kind. I believe, however, it was the intention of the law-makers to still preserve the legal unity of husband and wife, and that marriage still "acts as a perpetually operating discharge of all wrongs between man and wife, committed by one upon the other." In other words, if the Legislature had intended such a radical departure from the rule as it now exists as indicated by the majority opinion, it would have said so in plain terms.

Many cases might be cited to show that statutes broader than ours have not conferred upon husband and wife the right to sue each other for personal tort.

But my dissent is based upon what I believe to be an adherence to the principles of law heretofore decided by this court. I have no regret that, by judicial construction, the rules of the common law on this subject "have gone to that bourne from which no traveler returns, where they must rest undistinguished by a single tear shed for their departure."

Mr. Justice Wood concurs in this dissent.