## Wytheville.

### KEISTER'S ADMINISTRATOR V. KEISTER'S EXECUTORS.

June 13, 1918.

1. HUSBAND AND WIFE—*Assault and Battery—Action by Wife.*—At common law a wife could not maintain an action for damages for an assault upon her by her husband during the coverture.

2. ACTIONS—*Right of Action.*—A right of action at law can in no case exist unless, (a) the plaintiff be found to have had, at the time alleged cause of action arose, a substantive civil right, the breach or invasion of which right (constituting in the case of a tort a civil wrong) gave rise to a cause of action; and (b) the plaintiff be found to have had, at the time the action is instituted, a civil remedy by action at law.

3. HUSBAND AND WIFE—*Assault and Battery—Action for Death—Section 2286-a, Code of 1904.*—Section 2286-a of the Code of 1904 provides as follows: "A married woman may contract and be contracted with, sue * * * in the same manner and with the same consequences as if she were unmarried, whether the right or liability asserted by * * * her, shall have accrued before or after the passage of this act."

   *Held:* That this statute has not conferred upon a married woman a right of action against her husband for damages for an assault upon her committed by the husband during the coverture. It follows, therefore, that the personal representative of a wife, who was killed by her husband when the husband and wife were living together in that relationship, has no right of action against the husband or his personal representative for the death of the wife.

4. HUSBAND AND WIFE—*Assault and Battery—Action for Death—Section 2286-a, Code of 1904.*—The portion of the act quoted in the preceding headnote had reference only to the remedies thereby given to a married woman. It merely provides that at all times during the coverture a married woman is thereby given a right to sue, provided she had, at the time it is alleged that the cause of action arose, the substantive civil right which was necessary to give rise to such cause of action, and does not confer the substantive right necessary to support the right

of a married woman to sue her husband for an assault upon her committed by him during the coverture.

5. WORDS AND PHRASES—"*Unmarried*"—*Section 2286-a, Code of 1904.*—The word "unmarried" originally and ordinarily means, it is true, *never having been married,* but the term is a word of flexible meaning and slight circumstances will be sufficient to give the word its other meaning of *not having a husband or wife at the time in question,* and as the term is used in section 2286-a, Code of 1904, it has the meaning of "not having a husband" at the time of the suit or action.

6. STATUTES—*Construction—Derogation of Common Law.*—The legislature is presumed to have known and to have had the common law in mind in the enactment of a statute; and the statute will be construed to read as if the common law remained unchanged (that is to say, the statute will be read along with the provisions of the common law, and the latter will be read into the statute), unless the purpose of the statute to change the common law appears from the express language of it or by necessary implication from such language.

7. STATUTES—*Construction—Prior Statutes.*—The statute law, existing at the passage of an act, as well as the common law, should be borne in mind in construing it, and the latter statute should be construed in the light of the prior statute law on the subject.

8. STATUTES—*Construction—General Act—Codification—Repeal.*—To a general act on a subject, in which the entire law on that subject is recast and condensed and certain provisions of the former law are repealed, the same rule of construction is applicable as is applicable to a general codification of statute laws. No intention to change the meaning or effect of prior statutes is to be inferred from a mere change of phraseology in the statute as codified. The presumption is that the old law was not intended to be changed unless a contrary intention plainly appears in the new.

Error to a judgment of the Circuit Court of city of Norfolk, in an action of trespass on the case. Judgment for defendants. Plaintiff assigns error.

*Affirmed.*

## STATEMENT OF THE CASE AND FACTS.

This case is before us upon review of the action of the court below in sustaining a demurrer to the declaration

of the plaintiff in error against the defendants in error and dismissing the declaration in an action for damages for the death of the plaintiff's intestate alleged to have been caused by the wrongful act of the testator of the defendant in error.

## THE FACTS.

The material facts appearing from the allegations of the declaration are, that a wife (the plaintiff in error's intestate) was killed by her husband (the defendant in error's testator); that the husband and wife were lawfully married and were living together in that relationship when the wife was so killed; that the husband survived his wife and then died leaving a will by the appointment of which the defendants in error duly qualified as his executors.

*E. R. Baird, Jr.,* for the plaintiff in error.

*E. R. F. Wells,* for the defendants in error.

Sims, J., after making the foregoing statement, delivered the following opinion of the court:

The following positions with respect to the law are well settled and are not questioned by counsel in the case:

Notwithstanding the existence of the statutes, sections 2902, 2903 and 2906 of the Code of Virginia, the plaintiff in error in the instant case had no right to maintain the action and the demurrer was, therefore, properly sustained by the trial court, unless the wife, had she survived, would have had a right of action against the husband, had he survived, for damages for an assault upon her by him during the coverture. At common law no such right of action existed on the part of the wife. If such a right of action

existed at the time the action in the instant case was instituted, it was conferred by section 2286-a of Pollard's Code of Virginia, 1904 (Acts 1899-199, p. 1240). That part of such statute relied on as conferring the right of action in question, is as follows:

" * * * A married woman may contract and be contracted with, sue * * * in the same manner and with the same consequences as if she were unmarried, whether the right or liability asserted by * * * her, shall have accrued before or after the passage of this act. * * * "

The sole controverted question in the case, upon which its decision turns, is—

1. Has the statute last quoted changed the common law on the subject and conferred upon a married woman a right of action against a husband for damages for an assault upon her committed by the husband during the coverture?

This is a question of first impression in this State and must, therefore, be resolved by a consideration of it upon principle and the construction of the statute last quoted, with such aid as we can obtain from the decisions of other jurisdictions construing statutes on the same subject.

In approaching this question we have to bear in mind the elementary principle that a right of action at law can in no case exist unless, (a) the plaintiff be found to have had, at the time the alleged cause of action arose, a substantive civil right, the breach or invasion of which right (constituting in the case of a tort a civil wrong) gave rise to a cause of action; and (b) the plaintiff be found to have had, at the time the action is instituted a civil remedy by action at law.

In regard to the very ancient maxim that wherever there is a right there is a remedy, it is said in 1 Cooley on Torts (3d ed.), p. 22: "No Wrong Without a Remedy. Judicial development of the law is perceived in two forms: In the recognition of rights and in giving a remedy for the inva-

sion or deprivation of rights.   *   *   A right cannot be recognized until the principle is found which supports it. But when a right is found, a remedy must follow of course."

The primary inquiry confronting us in the instant case, therefore, is whether the married woman's statute in Virginia, the portion of which relied on by the plaintiff in error is quoted above, confers upon married women during coverture the substantive civil right essential to support a cause of action in a suit at law for damages instituted during the coverture by a wife against her husband, for an assault upon her committed by the husband during the coverture?

The substantive civil right in question is a legal existence—a legal personality—of a married woman, separate and apart from the legal personality of her husband, during coverture. Such a right a married woman had not and has not at common law.

The inquiry before us, therefore, is not whether the statute relied on, as aforesaid, has given married women the same remedies they would have if unmarried (whether as if they had never married, or as if no longer married) to enforce or to obtain compensation for the invasion of substantive rights which may accrue to married women (whether at common law or by statute), but whether the statute aforesaid has conferred on married women the particular substantive right aforesaid. This is apparent when we consider that the statute may do the former completely, and yet, if a married woman be not given the civil right aforesaid, out of the invasion of which only can arise the cause of action in question, the remedy given her by the statute can avail her nothing in an action such as that in question.

Hence, it must be constantly borne in mind in the consideration of the subject before us that the primary inquiry is, has the statute last quoted conferred upon married

21

women the substantive right above mentioned—has it changed the rule of the common law on this subject?

Now with respect to the construction of statutes in derogation of the common law there are certain well settled rules which have been so long and so well established that we need but to refer to them. Among those rules is the following: The legislature is presumed to have known and to have had the common law in mind in the enactment of the statute; and the statute will be construed to read as if the common law remained unchanged (that is to say, the statute will be read along with the provisions of the common law, and the latter will be read into the statute), unless the purpose of the statute to change the common law appears from the express language of it or by necessary implication from such language. The existence of the rule last mentioned is not controverted in the instant case. We do not, therefore, occupy space in discussing it, or citing authority to sustain the statement of such rule.

Coming now to construe the statute of Virginia aforesaid in the light of the common law on the subject, and by aid of the rule of statutory construction mentioned, we are met by the following considerations:

Such statute does not *expressly* confer the substantive right aforesaid. Does it do so by necessary implication? If so, it must, of course, be done by words of no uncertain meaning; by language which must not be entirely consistent with the common law on the subject remaining unaltered.

Whether the statute above quoted confers on married women the substantive right aforesaid manifestly depends, in the last analysis, upon, ascertaining to what point of time, in the life of the married woman asserting the right of action in question, the statute means to refer in its reference to her status as "unmarried;" and also upon ascertaining the meaning with which the statute uses the word "unmarried." Does it mean to refer to the time of the

arising of the alleged cause of action (to the time of the assault of the husband upon the wife in a case such as the instant case), and to say that the status of a married woman shall be regarded, as of that time, as if it were the same as if she had *never been married?* : or does the statute refer to the time the suit or action is instituted, and mean to say that, as of the latter time, she shall be regarded as not having a husband? Are we to construe the clause of the statute, "as if she were unmarried," to mean, "as if she did not have a husband," or "as if she had never been married"? It is only by the latter construction that any foundation can be found on which to rest the position that the statute by implication changes the common law and confers upon married women the substantive right aforesaid.

Now the word "unmarried" originally and ordinarily means, it is true, *never having been married*—"But the term is a word of flexible meaning and slight circumstances will be sufficient to give the word its other meaning of *not having a husband or wife at the time in question.*" 8 Words & Phrases (1st ed.), p. 7196. (Italics supplied.) The subject of that part of the statute which is under consideration is the right of a married woman to sue (and also their liability to be sued, on the side of the statute not quoted above and with which we are not concerned in the instant case). If the legislature had intended to confer upon married women the substantive civil right of a legal existence and legal personality separate and apart from that of the husband, during coverture, nothing was easier than for it to have said so in language of no uncertain meaning. If it intended not to confer such a substantive right, but merely to enlarge the remedies of married women with respect to other substantive rights of theirs existing at common law and conferred by the first portion of this very statute, the language of the statute was appropriate to accomplish the latter purpose and its object is fully accomplished when the

statute is given that meaning. It is not necessary, therefore, that any further meaning be given to it. This being so, we cannot, under the rule of construction above referred to, give any further meaning to it. Hence, it seems clear to us that the statute in its use of the word "unmarried" has reference to the time the suit or action in quesion is instituted, and uses the word "unmarried" with the meaning of "not having a husband" at the time of the suit or action. Such being the meaning with which the word "unmarried" is used in the statute, clearly the effect of the statute, as above indicated, is merely to provide that all disabilities of married women *to sue* (and be sued) are thereby removed *as of the time a suit or action is instituted* by (or against) a married woman, upon any cause of action then existing by or against her. That is to say, the statute under consideration merely provides that at all times during the coverture a married woman is thereby given a right to sue, provided she had, at the time it is alleged that the cause of action arose, the substantive civil right which was necessary, as aforesaid, to give rise to such cause of action. The statute, therefore, is entirely consistent with the common law, which does not confer the substantive right aforesaid on married women, and hence does not change the common law in that regard by implication. That is to say, the portion of the statute under consideration has reference only to the remedies thereby given to married women and does not confer the substantive right necessary to support the right of a married woman to sue her husband for an assault upon her committed by him during the coverture.

Such is the conclusion to which we are led by a consideration of the statute on principle and under what are universally considered and admitted to be proper rules of construction of such a statute. We are confirmed in that conclusion by our examination of the authorities on the subject.

In the case of *Fitzpatrick* v. *Owens*, 124 Ark. 167, 186

S. W. 832, 187 S. W. 460, L. R. A. 1917 B, 774, relied on by the plaintiff in error, a portion of the married woman's act of Arkansas was substantially the same as that portion of the Virginia statute above quoted. Such portion of the Arkansas statute is as follows: " * * * * every married woman and every woman who may in future become married, shall have all the rights * * to sue * * as thought she were a *femme sole."* Laws 1915, p. 684. As to that portion of the Arkansas statute, the Arkansas court, in a very able opinion by McCulloch, C. J., in the case last cited, said: "The words 'to sue and be sued' when considered by themselves, merely enlarge the remedies of married women and do not enlarge her rights."

It is true that the Arkansas court, in the case last cited, held that the married woman's act of that State conferred the substantive right aforesaid upon married women and that an action by a married woman against her husband for damages for an assault committed upon her by the husband during coverture may be maintained in that State under such statute. But the language of that statute is materially different from the Virginia statute relied on in the instant case. The Arkansas statute, in addition to the language above quoted therefrom having reference to the remedies of married women, contains also the following language conferring substantive rights; " * * in law and equity shall enjoy all rights and be subject to all the laws of the State as though she were a *femme sole."* This language appears in the Arkansas statute in the following connection: " * * every married woman and every woman who in the future may become married, shall have the rights * * to sue * * and *in law and equity shall enjoy all rights, and be subject to all the laws of the State, as though she were a femme sole."* (Italics supplied.) It was because of the words which we have italicized that the Arkansas court held that the substantive

right aforesaid was conferred by the statute of that State on married women. This clearly appears to have been the controlling factor in that decision, as will be seen from the following quotation from the opinion of the court in that case: "An analysis of the language of the statute shows that the legislature meant to complete the work of emancipation and to give married women all the rights and remedies possessed by an unmarried woman. The words 'to sue and be sued,' when considered by themselves, merely enlarge the remedies of a married woman and do not enlarge her rights, but in considering the significance of those words we must do so in connection with the words which precede and which follow, and undoubtedly the use of those words serve to give a remedy for all the rights found to have been enlarged by the preceding words and those which follow. Now, the preceding words confer, in unqualified terms, the right of married women 'to contract and be contracted with,' and the words which follow declare in the very broadest terms her right 'in law and equity' to 'enjoy all rights and be subject to all the laws of the State as though she were a *femme sole.*' If this language be given any effect at all in the light of preceding statutes enlarging the rights of the married woman, it necessarily means that a married woman is to enjoy in law and at equity all the rights which she would enjoy if she still remained *a single woman,* and that with respect to those rights she may sue and be sued." (Italics supplied.)

In the Virginia statute on the subject, we have no provision corresponding with the Arkansas statute conferring on married women all substantive rights to be enjoyed by her as "if she still *remained a single woman.*" (Italics supplied.) Hence, the decision last cited is no authority for the position that the same construction should be given the Virginia statute as that given the Arkansas statute. On the contrary, the principle on which the Arkansas de-

cision was correctly based is opposed to such a construction of the Virginia statute.

With us the merger of the legal existence of a married woman, during coverture, in the personality of the husband has, it is true, been removed by statute so as to exist no longer with respect to many subjects, but not as to all subjects. As we have seen above, nothing can be found in that portion of our statute relied on as aforesaid, which has the effect of declaring that a married woman shall during the coverture have a separate legal existence and personality from that of her husband as if she had never been married. Many disabilities of married women have been removed by the statute in Virginia, both with respect to their rights and remedies, but not *all*, with respect to her personal rights, certainly. To give only one illustration: It was held by this court in *Norfolk, etc., Co.* v. *Williar*, 104 Va. 679, 52 S. E. 380, per the syllabus of that case: "Notwithstanding the comprehensive provisions of the present married woman's act in this State (Acts 1899-1900, p. 1240), the husband is still entitled to the services of his wife and in an action by her to recover damages for injury inflicted upon her, while the only testimony as to diminution of her ability to perform her ordinary duties related to her impaired capacity to attend to her household duties, it is error to instruct the jury that in ascertaining the damages they may take into consideration the diminution, if any, of her physical ability to perform the ordinary duties of life, as the language of the instruction covers damages for which the husband alone can recover." Here is a substantive right not conferred on married women by the statute, which would have been conferred upon them if the construction of it relied on by the plaintiff in error were correct.

We are indebted to the learning and diligence of able counsel on both sides of this case for their exhaustive citation and discussion of the numerous authorities construing

statutes of other jurisdictions on the subject of the right of action of married women against their husbands for torts committed upon them during coverture by their husbands. All of such authorities have been carefully examined and considered. We shall here cite those of them which in any way, even remotely, seem to us to throw light upon the question before us. *Fitzpatrick* v. *Owens, supra; Fiedler* v. *Fiedler,* 42 Okla. 124, 140 Pac. 1022, 52 L. R. A. (N. S.) 189; *Brown* v. *Brown,* 88 Conn. 42, 89 Atl. 889, 52 L. R. A. (N. S.) 185, Ann. Cas. 1915 D, 70; *Gilman* v. *Gilman,* 78 N. H. 4, 95 Atl. 657, L. R. A. 1916 B, 908; *Thompson* v. *Thompson,* 218 U. S. 611, 31 Sup. Ct. 111, 54 L. Ed. 1180, 30 L. R. A. (N. S.) 1153, 21 Ann. Cas. 921; *Longendyke* v. *Longendyke,* 44 Barb. (N. Y.) 366; *Freethy* v. *Freethy,* 42 Barb. (N. Y.) 641; 2 Bishop on Law of Married Women, sec. 377, approving the two last named cases; *Schultz* v. *Schultz,* 27 Hun. (N. Y.) 26, contra to the two New York cases last above cited, but reversed in *Schultz* v. *Schultz,* 89 N. Y. 644, holding in accord with the before named New York cases; *Lillienkamp* v. *Rippetos,* 133 Tenn. 57, 179 S. W. 628, L. R. A. 1916 B, 881, Ann. Cas. 1917 C, 901; *Peters* v. *Peters,* 156 Cal. 32, 103 Pac. 219, 23 L. R. A. (N. S.) 699; *Strom* v. *Strom,* 98 Minn. 427, 107 N. W. 1047, 6 L. R. A. (N. S.) 191, 116 Am. St. Rep. 387; *Schultz* v. *Christopher,* 65 Wash. 496, 118 Pac. 629, 38 L. R. A. (N. S.) 780; *Peters* v. *Peters,* 42 Iowa, 182; *Bandfield* v. *Bandfield,* 117 Mich. 80, 75 N. W. 287, 40 L. R. A. 757, 72 Am. St. Rep. 550; *Rogers* v. *Rogers,* 265 Mo. 200, 177 S. W. 382; *Sykes* v. *Speer* (Tex. Civ. App.), 112 S. W. 422; 1 Cooley on Torts (3d ed.), p. 474.

In view of the importance of the subject, we will make some special reference to those of the above cited decisions which involve the construction of statutes which are most nearly alike the Virginia statute we have before us for construction.

The case of *Thompson* v. *Thompson, supra,* was an action by a wife against her husband for damages for an assault upon her by him, committed during the coverture, and involved the construction of the District of Columbia statute. That statute so far as material, was as follows: "Married women shall have power to * * sue separately * * for torts committed against them, as fully and freely as if they were unmarried." Code D. C., § 1155. In all essential particulars this statute is the same as the Virginia statute we have under consideration. The majority opinion in the *Thompson Case* held: "The statute was not intended to give a right of action as against the husband, but to allow the wife, in her own name, to maintain actions of tort which, at common law, must be brought in the joint names of herself and husband." In this opinion it is also said: "We cannot but regard this case as another of many attempts which have failed to obtain by construction radical and far reaching changes in the policy of the common law, not declared in the terms of the legislation under consideration."

Mr. Justice Harlan delivered a dissenting opinion in the *Thompson Case* in which Mr. Justice Hughes and Mr. Justice Holmes concurred. They were of opinion, in substance, that the statute by necessary implication changed the common law on the subject and conferred upon married women the right to maintain such an action. The dissenting opinion takes the position that such a result necessarily followed from the language of the statute, unless there was read into and added to the statute the following language not found therein: "provided, however, that the wife shall not be entitled in any case to sue her husband * * for a tort committed against her person." With the utmost respect for the learned judge who delivered such dissenting opinion and the two learned judges who concurred therein, we are of opinion that upon principle, apart from its authority, the

22

opinion of the majority of the Supreme Court in that case is sustained by the better reasoning. In truth it was but the common law which the majority opinion read along with and hence read into the statute in the particular just stated. If the statute conferred rights of remedy only in respect to torts, and not substantive rights, upon married women, this rule of the common law and the provision of the statute could both stand and be read together. Hence there was no change of the common law by the statute by implication. And so the majority opinion held.

In New York the statute concerning married women which was construed in the New York cases above cited, was as follows: "Any married woman may bring and maintain an action in her own name for damages against any person or body corporate for any injury to her person or character the same as if she were unmarried." Laws 1860, c. 90, § 7. Here again we have a statute very like the Virginia statute we have under consideration. In all essential respects the statutes are the same. As the result of the decision of the court of last resort of New York in the case of *Schultz* v. *Schultz*, 89 N. Y. 644, reversing the holding of the Supreme Court of New York in that case in conflict with the cases of *Freethy* v. *Freethy* and *Longendyke* v. *Longendyke, supra,* the holding of the two last named cases must be taken to be the construction of the New York statute by its court of last resort. Such construction is that the New York statute above quoted does not confer upon a married woman the right to sue her husband for assault or slander committed upon or spoken against her during the coverture. The court, in the *Freethy Case,* in its opinion said: "When the legislature intends to make such a striking innovation of the rule of the common law * * it should use such language as will make it clearly manifest and not leave it to the construction of the courts."

In *Fiedler* v. *Fiedler, supra,* in which it was held that the substantive right aforesaid was conferred upon married women by the statute of Oklahoma, the statute law construed provided, amongst other things, that "Women *shall retain the same legal existence and legal personality after marriage as before marriage * * *"* (Italics supplied.) "Any person who suffers detriment from the unlawful act or omission of another, may recover from the person in fault a compensation therefor in money, which is called damages." "Detriment is a loss or harm suffered in person or property." "The rule of the common law, that statutes in derogation thereof are to be strictly construed, has no application to the laws of this State * * *" The express language of the statute, "Women shall retain the same legal existence and legal personality after marriage as before marriage," conferred upon married women the substantive civil right of a legal existence and legal personality apart from the personality of the husband during coverture. Hence an assault by the husband upon a wife, although during coverture, would be in violation of such civil right and would give rise to a cause of action therefor in the wife. Therefore, the next following provision of the Oklahoma statute above quoted, conferred upon the wife a remedy in the premises by action for damages. Upon principle, therefore, the decision last cited is wholly in accord with the positions taken above, and it was unnecessary for the court in that case to rely at all upon the statute of Oklahoma last above quoted. Hence, there is nothing in the construction by such case of the Oklahoma statute to warrant the same construction of the Virginia statute. Indeed, a consideration of the former statute discloses the precise enactment which is lacking in the Virginia statute to confer the substantive civil right upon married women which is necessary, as aforesaid, to support the action in the instant case.

It is true that in Connecticut and New Hampshire it is held that married women's acts which seem to us to have gone no farther than the Virginia statute law on the subject, have completely emancipated married women from all disabilities of coverture, both as to rights and remedies, and, hence, have conferred on married women the substantive civil right aforesaid. *Brown* v. *Brown* and *Gilman* v. *Gilman, supra.* These are the only decisions to which we have been cited or which we have been able to find which are inconsistent with the conclusion we have reached above. For the reasons above stated, however, we cannot consider that these decisions are correct on principle and hence we cannot follow them.

The case of *Peters* v. *Peters, supra,* should, perhaps, be referred to, on the question as to whether other portions of section 2286-a of the Virginia statute not quoted above (and not relied on, indeed, by the plaintiff in error), confer the substantive right aforesaid upon married women. The first part of the Virginia statute referred to confers upon married women the substantive right to acquire and hold property, etc., "as if she were unmarried." Here, plainly, the reference in the statute to the status of "unmarried" is to be referred to the point of time when the property is acquired or is held, and hence the statute plainly confers upon women married at the time they acquire and hold property the substantive civil right to do so. And the subsequent provision of the statute conferring rights of remedy upon married woman operates to give them right of action for the violation of any of their rights of property, conferred by the preceding portion of the statute as well as by the common law. Now, as flowing from these considerations, the question arose in the *Peters Case* whether the right of a married woman to sue her husband for a tort committed upon her by the husband during coverture was her *property.* Of course, if she had such a right of suit it was in

truth *property*. But, as was held in the *Peters Case*, whether such a right existed was the very question in issue; and it was but begging the question to say that if she possessed such a right it was property and *ergo* the statute conferred such right when it conferred on married women the right to acquire property. The question still remained, whether the statute conferred on married women the substantive right aforesaid; and it was decided that the effect of the provisions of a statute substantially the same as that of the first part of the Virginia statute aforesaid did not confer such a substantive right.

But one aspect of the instant case remains to be dealt with by us. It is urged upon our consideration, in behalf of the plaintiff in error, that the statute law, as well as the common law, existing aforetime, should be borne in mind by us in construing that portion of section 2286-a relied on as aforesaid, and that the latter statute should be construed in the light of prior statute law on the subject. This should undoubtedly be done and will be done by us.

Attention is called by counsel to the provision contained in section 2284 of the Code of Virginia of 1887 which is as follows: "Nothing, however, in this or any other section of this chapter shall be construed as giving to a married woman a right to damages or a right of action therefor against her husband for any injury to her person or reputation committed by him before marriage or during the coverture." Attention is also called by counsel to what was said by this court in *Hirth* v. *Hirth*, 98 Va., at page 121, 34 S. E. 964, to-wit: "If the object of the revisors had been to emancipate all married women from the disabilities of coverture, there would have been no need of chapter 103 of the Code, but it might have been accomplished in a few brief sentences in one section;" and to the fact that this opinion was rendered on the 15th of February, 1900, and that the legislature, in March next following, in Acts 1899-

1900, page 1240, by enacting section 2286-a aforesaid, amended sections 2291, 2293, 2294 and 2296, and repealed the remaining sections of chapter 103 of the Code of 1887, including section 2284 aforesaid. And it is urged, that in view of the broad language of section 2286-a aforesaid with respect to the right to sue thereby given to married women (quoted in the first part of this opinion), the repeal of section 2284 aforesaid, containing the express provision thereof aforesaid, "is the strongest evidence of the existence of an intention upon the part of the legislature not to forbid the assertion of a right such as the plaintiff is in this case insisting upon," and that it is, indeed, strong evidence that the legislature intended to confer and did confer such right on married women by section 2286-a aforesaid. There are three considerations which seem to us to wholly negative the inference thus sought to be drawn. First, the statute (Acts 1899-1900, page 1240), was a general act on the subject, in which the entire married woman's law was recast and condensed and nine sections of the Code of 1887, including the entire section 2284, were repealed. It is not a case of the amending of a statute and leaving out a certain portion or portions of the former statute and retaining other portions of it, which necessarily have a different meaning with the former portion or portions left out. In principle the same rule of construction is applicable to such an act as is applicable to a general codification of statute laws. No intention to change the meaning or effect of prior statutes is to be inferred from a mere change of phraseology in the statute as codified. The presumption is that the old law was not intended to be changed unless a contrary intention plainly appears in the new. *Harrison & Byrd* v. *Wissler*, 98 Va. 597, 36 S. E. 982. Secondly, section 2284 of the Code of 1887 expressly conferred substantive rights upon married women and when it expressly stated that the separate estate of a married woman " * * *

shall include rights in action, damages for a wrong * * *
to which she becomes entitled during coverture," it was
necessary for the legislature to include in that section such
an express provision as that above quoted, negativing the
intention to include the right of a married woman "to dam-
ages or a right of action therefor against her husband
* * *" etc., in order to prevent such a right being given
by construction of such statute, contrary to the legislative
intention. In view of the wholly different phraseology of
the subsequent statute (section 2286-a), however, which
did not include expressly or impliedly, "rights in action,
damages for a wrong * * * to which she becomes en-
titled during coverture" among the substantive rights con-
ferred by the statute on married women, it was manifestly
unnecessary for the negative provision aforesaid to be in-
cluded in the section 2286-a statute. This consideration is
amply sufficient to account for the omission of such negative
provision in the latter statute. Thirdly, the language of the
section 2286-a statute is such that clearly, as above shown,
it will not admit of the construction contended for by the
plaintiff in error. To give it such a construction would be
to effect, by an unwarranted judicial construction (to use
in part the language of the Supreme Court of the United
States in the *Thompson Case,* above quoted) a "* * *
far reaching (change) in the policy of the common law, not
declared in the terms of the legislation under consideration."

The further question is raised in the instant case, whether,
if there was a right of action aforesaid in the wife, it sur-
vived against the personal representative of the husband?
In view of our conclusion that there was no such right of
action in the wife, the further question mentioned does not
arise in the case before us and hence we do not deal with
it in this opinion.

For the foregoing reasons, we hold that there was no
error in the action of the court below in sustaining the

demurrer to the declaration of the plaintiff, and the judgment complained of will be affirmed.

*Affirmed.*

Burks, J., concurring:

I concur in the results of Judge Sims' opinion, and will state briefly the ground of my concurrence.

At common law, husband and wife were, for the most part, regarded as one, and that one was the husband. By the mere fact of marriage, he became the owner of all her tangible personal property as fully as if he had bought and paid for it. He also became the owner of all her choses in action, provided he reduced them into possession, actual or constructive, during the coverture. He was entitled to the rents and profits of her real estate during the coverture, and, under certain conditions, this right was enlarged to an estate for his life in such rents and profits. She could not make a will, nor a contract, nor could she sue or be sued alone. It was *these* restrictions upon her rights and powers that were considered "a reproach to our civilization" and led to the enactment of statutes in every State of the Union removing, to a greater or less degree, these common law disabilities. But it must be borne in mind that marriage is something more than a mere civil contract. The mere act of marriage gives rise to a new status between the parties thereto and society, and to new rights and obligations between the parties themselves. It creates the most sacred relation known to society, and is fostered, regulated and protected by statute. Upon the preservation of its integrity, the health, morals and purity of the State is dependent. For these causes, "shall a man leave his father and mother and cleave unto his wife, and they twain shall be one flesh." The like obligation rests upon the wife. It is the duty of the husband to support his wife and to shield, defend and protect her in every way possible. It is the duty of the wife

to reverence her husband, and to serve him. These duties grow out of the mere act of marriage. The husband may not present a bill against his wife for board and clothing, nor the wife present to her husband a bill for presiding over the household. The law will not imply a contract to pay such bills. By the act of marriage, the parties thereto establish a unit of society, which automatically carries with it primary obligations, which cannot be destroyed without reducing that honorable estate to mere licensed cohabitation. These obligations inhere in the mere fact of marriage, and forbid the idea that this "one flesh" may so divide itself that either spouse may sue the other. Of course, it is competent for the legislature to sever this unity so far as it may seem wise to do so, and it has severed it in respect to the wife's property, but to warrant a holding that either spouse may sue the other for slander, libel or assault, the language of the statute should be so plain that there could be no room for difference of opinion on the subject. This cannot be said of our statute which simply provides that, "a married woman may contract and be contracted with, sue and be sued, in the same manner, and with the same consequences, as if she were unmarried, whether the right or liability asserted by or against her shall have accrued before or after the passage of this act." Statutes in derogation of the common law are to be strictly construed, and I am unwilling, upon such language as is contained in the foregoing statute, to obliterate the primary obligations growing out of the marriage relation, to revolutionize the whole law relating to husband and wife, and open the courts to the public discussion of domestic difference, which, when of sufficient consequence, may be settled by the chancellor in suits for divorce, or by prosecution for violation of the criminal laws of the State.