LEACH *v.* LEACH.

5-1235                                    300 S. W. 2d 15

Opinion delivered March 25, 1957.

*Eugene Coffelt,* for appellant.

*Eli Leflar,* for appellee.

GEORGE ROSE SMITH, J. This case presents a question that is novel in this state and very nearly so in the United States: Can a husband maintain a suit against his wife for damages due to her negligence? The appellant's complaint, as supplemented by a stipulation, alleges that on August 9, 1956, he was the owner of a pick-up truck and a Ford sedan. As Leach was driving the truck on a county road he collided with his wife, who was driving the sedan in the opposite direction. It is asserted that Mrs. Leach was driving on the wrong side of the road and at an excessive speed. The trial court sustained a demurrer to the complaint and dismissed the action.

At common law neither spouse could maintain a tort action against the other. In the various states there is a decided difference of opinion about the extent to which the common law rule has been affected by statutes removing the disabilities of married women. The question has usually been considered in the converse situation, where the wife seeks to sue her husband. By a dwindling majority which now stands at about two to one the American courts hold that she cannot maintain the action. Prosser on Torts (2d Ed.), § 101; Sanford, Personal Torts Within the Family, 9 Vanderbilt L. Rev. 823. The courts following the majority view construe the emancipation acts strictly, as being in derogation of the common law, and usually suggest that recognition of suits between spouses would adversely affect har-

mony within the home. Prosser's criticism of the majority rule typifies the position generally taken by legal writers: "The chief reason relied upon by all these courts, however, is that personal tort actions between husband and wife would disrupt and destroy the peace and harmony of the home, which is against the policy of the law. This is on the bald theory that after a husband has beaten his wife there is a state of peace and harmony left to be disturbed; and that if she is sufficiently injured or angry to sue him for it, she will be soothed and deterred from reprisals by denying her the legal remedy — and this even though she has left him or divorced him for that very ground, and though the same courts refuse to find any disruption of domestic tranquillity if she sues him for a tort to her property, or brings a criminal prosecution against him. If this reasoning appeals to the reader, let him by all means adopt it." Prosser, *loc. cit.*

This reasoning has never appealed to us. With respect to a wife's suit against her husband we adopted the minority view more than forty years ago and have adhered to it. *Fitzpatrick* v. *Owens,* 124 Ark. 167, 186 S. W. 832, 187 S. W. 460, L. R. A. 1917B, 774, Ann. Cas. 1918C, 772; *Katzenberg* v. *Katzenberg,* 183 Ark. 626, 37 S. W. 2d 696. In the *Fitzpatrick* case we considered and rejected both the usual arguments, that the statute is to be interpreted narrowly and that the majority view tends to preserve marital harmony. If these arguments are without merit when the wife sues the husband, they are obviously equally ineffective when the situation is reversed.

As Sanford correctly points out in the article cited above, the problem is primarily one of statutory construction. Our emancipation act is far more sweeping in its language than are most statutes on the subject: "Every married woman and every woman who may in the future become married, shall have all the rights to contract and be contracted with, to sue and be sued, and in law and equity shall enjoy all the rights and be subjected to all the laws of this State, as though she were a femme sole; provided, it is expressly declared to be

the intention of this act to remove all statutory disabilities of married women as well as common law disabilities, such as the disability to act as executrix or administratrix as provided by § 6 of Kirby's Digest, and all other statutory disabilities." Ark. Stats. 1947, § 55-401.

We do not perceive that the explicit language of the statute leaves any doubt about the legislative intention. The appellee's suggestion that the act was meant only to broaden the rights of married women, and not to curtail the protection afforded them at common law, is rebutted by the unequivocal and unrestricted declaration that married women may "sue and be sued." This clause was the basis for our holding that a wife may sue her husband in tort. There can be no sound basis for a different conclusion when the shoe is on the other foot, for in the same breath the legislature abolished her disability to sue and her immunity from being sued.

On the question now presented the decisions elsewhere do not support the appellee's contention that we can with consistency adopt one rule for the wife and another for the husband. As might be expected, those courts which hold that a wife cannot sue her husband for a personal tort also hold that he cannot assert a similar cause of action against her. In jurisdictions adhering, as we do, to the minority view, the converse situation has arisen only twice, and it happens that both cases denied the husband's right to sue his wife. *Scholtens* v. *Scholtens,* 230 N. C. 149, 52 S. E. 2d 350; *Fehr* v. *General Accident, etc., Corp.,* 246 Wis. 228, 16 N. W. 2d 787, 160 A. L. R. 1402. But in each case the court was construing a statute which expressly conferred upon a married woman the right to sue but did not mention the correlative matter of her liability to being sued. The problem, as we have said, is one of statutory construction; so we cannot be guided by decisions based upon statutes that differ from ours upon the very point that is controlling.

Reversed, the demurrer to be overruled.

HARRIS, C. J., and HOLT, J., dissent.

CARLETON HARRIS, Chief Justice (dissenting). In dissenting to the ruling of the majority, I desire to make it clear that my dissent is not based upon the fact that the common law did not grant either spouse the right to maintain tort action against the other; nor am I concerned because we are the first state to allow the husband the right to sue his wife for tort. I fully agree that if the wife has the right to sue the husband in tort, the converse should likewise be true, but I am persuaded that to allow either spouse to sue the other for *unintentional* tort is against public policy,[1] and should be so declared by this Court. I would accordingly overrule the case of *Katzenberg* v. *Katzenberg,* 183 Ark. 626, 37 S. W. 2d 696.

I would not overrule *Fitzpatrick* v. *Owens,* 124 Ark. 167, 186 S. W. 832, 187 S. W. 460, L. R. A. 1917B, 774, Ann. Cas. 1918C, 772, as that case dealt with the right of the wife to sue her husband for *intentional* injury. Actually, in that case, the husband made an assault upon the wife, and killed her, and the suit was brought by her administrator. To me, there is a vast difference between rights of a spouse that might accrue from an *intentional* injury, in contradistinction to an *unintentional* injury.

The theory of the law in those jurisdictions which frown upon suits between husband and wife is that permitting suits between spouses would adversely affect harmony in the home. The majority, in this current Opinion, quote Prosser. "The chief reason relied upon by all these courts, however, is that personal tort actions between husband and wife would disrupt and destroy the peace and harmony of the home, which is against the policy of the law. This is on the bald the-

---

[1] Bouvier's Law Dictionary defines Public Policy As: "That principle of the law which holds that no subject can lawfully do that which has a tendency to be injurious to the public or against the public good." It has been designated by Burroughs, J., as "an unruly horse pursuing us, and when once you get astride of it you never know where it will carry you."

ory that after a husband has beaten his wife there is a state of peace and harmony left to be disturbed; and that if she is sufficiently injured or angry to sue him for it, she will be soothed and deterred from reprisals by denying her the legal remedy — and this even though she has left him or divorced him for that very ground, and though the same courts refuse to find any disruption of domestic tranquillity if she sues him for a tort to her property, or brings a criminal prosecution against him. If this reasoning appeals to the reader, let him by all means adopt it.'' Prosser, *loc. cit.* I have no quarrel with this language; in fact, I quite agree that the harmony of the home is already disrupted when either spouse commits an *intentional* tort against the other. The same language does not apply to an *unintentional* tort.

Let us take a hypothetical case. The wife, after finishing her housecleaning, neglects to return the vacuum cleaner to the closet where it usually is placed, and negligently leaves same in the middle of the hall. The husband, returning home that night from a business trip, after the wife has retired, stumbles over same, and receives injuries. Under the view of the majority, he is entitled to sue the wife. Of course, if she is without means, he would not bring a suit; if, on the other hand, she is gainfully employed, or financially independent in her own right, and he goes to court to recover from her for the injury, no imagination is needed for one to know that harmony in that home would be completely disrupted, and connubial bliss abruptly terminated. The marriage relationship, which might have been happy enough, would totally disintegrate. But, on the other hand, let us say that this particular family has comprehensive personal liability coverage, and suit is brought. In such event, I concede that domestic harmony would not be destroyed, but it could not be logically argued that such a suit between spouses would be justified simply because the insurance company, after all, would be the one to pay. This brings me to one of the worst features involved in permitting this type of suit. Using my same example, let us say that the hus-

band fell and injured himself in the home, not because of his wife's negligence, but because of his own carelessness. There will be medical expenses and loss of time from work, with perhaps a resulting loss of income. Under this set of facts, the husband would have to stand this loss himself, which would also directly affect the welfare of the wife. Now, if this man and wife are without morals and conscience, what is to prevent the husband from instituting suit against his wife, alleging that his injury occurred in the manner first stated. (Wherein she left the cleaner in the hall.) She does not deny it, and how can it be proved that it did not happen in that manner? There are no other witnesses to establish that the injury was sustained by the husband because of his own negligence rather than that of his wife. Unfortunately, I fear that there might be a few husbands and wives who would welcome the opportunity to make a joint raid upon an insurance company. This certainly should not be permissible. Either set of facts presents an intolerable situation, not in the interest of the public, and one which the law should not countenance. While I hope that it will not so result, the holding of the majority, in my opinion, opens the door to fraudulent claims against insurance carriers.

Be that as it may, litigation between man and wife for an unintentional tort committed by one against the other, is not salutary, and actually is repugnant, to the marriage vows. The bulwark of our community and national strength is the home, and we should not adopt a policy that might well, in individual cases, rupture marital happiness.

Solely because I consider such holding to be *against public policy,* I respectfully dissent.

Justice HOLT joins in this dissent.