CLINTON HUNT v. LINDA WARD HUNT

No. 7526DC976

(Filed 5 May 1976)

1. Infants § 9— child custody — adultery of mother — evidence admissible
     The trial court in a child custody proceeding erred in refusing to allow plaintiff's evidence of defendant's purported adultery.

2. Infants § 9— child custody — fitness of mother — insufficiency of findings of fact

   In a child custody proceeding the trial court's findings of fact which stated merely that it would be in the child's best interest for custody to be placed with defendant mother and that defendant was a fit and proper person to have the care, custody and control of the child did not detail with sufficient particularity the question of fitness and failed to support the conclusions of law.

APPEAL by plaintiff from *Robinson, Judge*. Judgment entered 29 September 1975 in District Court, MECKLENBURG County. Heard in the Court of Appeals 17 March 1976.

Plaintiff father, separated for approximately one year from the defendant mother, petitioned by verified pleading for custody of the estranged couple's minor child, who had been living with the defendant mother. Plaintiff alleged that during the course of the separation defendant moved to Murfreesboro, Tennessee, carried on an adulterous relationship with one James Fathera, and became pregnant as a result of the adulterous relationship. Plaintiff maintained that he was a fit and proper person, prayed for a grant of custody and noted that no court had yet awarded custody to either spouse.

At the hearing plaintiff was not permitted to testify as to defendant's purported adultery but testified for the record that Linda told him that James Fathera lived in the apartment with the child and her. Plaintiff, moreover, was prevented from introducing into evidence the death certificate of a child, born on 11 August 1975, who died on 15 August 1975.

Plaintiff testified that he and defendant "agreed that he would pay $25.00 per week for the support of the child . . . [and that] he paid her . . . [until she] told him she did not want any more money from him and that he could not visit the child anymore."

Plaintiff further denied ever assaulting the defendant and asserted that if awarded custody, he would take care of the child's needs.

Ventrice Lynn Oxendine, a witness for plaintiff, testified that in July 1975 he watched defendant and James Fathera enter the home of Daisy Ward and that they "had not left this house when he stopped watching it at approximately 10:00 p.m. That James Fathera's car was still there and all of the

lights had been put out in the house except one that was on in a back bedroom."

One Quessie Knuckles, also testifying for plaintiff, stated that "during the months of June and July, 1975, she saw James Fathera at Daisy Ward's house where Linda Hunt and Jamie were staying, many times. That on one occasion she saw Linda and James Fathera asleep on a mattress in the living room of the house."

Defendant, testifying on her own behalf, stated that plaintiff threatened and assaulted her, failed to pay the informally agreed upon child support, and contended that she moved to Tennessee "because she was afraid of the Plaintiff"; that in August of 1975, she and Jamie moved from her mother's home to a mobile home in Cabarrus County, in a trailer park just across from the Charlotte Motor Speedway; that they lived in James Fathera's trailer during the week and then went to her mother's on the weekends; that James Fathera stayed in his trailer on the weekends.

On cross-examination, plaintiff was unable to inquire into defendant's alleged adultery and was not able to ascertain whether James Fathera was listed on a birth certificate as the father of the child born to defendant on 11 August 1975.

In its findings of fact and conclusions of law the District Court stated inter alia that "the best interest of the minor child would be that the child be placed with the Defendant . . . [and that] the Defendant is a fit and proper person to have the care, custody and control of the minor child." The court further ordered plaintiff to pay defendant $35 per week for child support and granted him certain visitation rights.

*Lacy W. Blue and Richard A. Cohan for plaintiff appellant.*

MORRIS, Judge.

[1] Plaintiff contends, inter alia, that the trial court erred in refusing to allow evidence of defendant's purported adultery. We agree.

As our Court has stated previously, a trial court commits " . . . prejudicial error in refusing to allow plaintiff to introduce evidence of defendant's adultery. While evidence of adul-

tery does not impel a finding of unfitness of the adulterous parent, '[e]vidence of adulterous conduct, like evidence of other conduct, is relevant upon an inquiry of fitness of a person for the purpose of awarding custody of minor children to him or to her.'" *Darden v. Darden,* 20 N.C. App. 433, 435, 201 S.E. 2d 538 (1974). (Citation omitted.)

[2]   Essentially, plaintiff also contends that the trial court's "findings of fact" fail to detail with sufficient particularity the question of fitness and fail to support the conclusions of law. We again find merit to plaintiff's position. See *Powell v. Powell,* 25 N.C. App. 695, 214 S.E. 2d 808 (1975).

In his findings of fact the trial court merely stated that it would be in the child's best interest for custody to be placed with the defendant and further found that the defendant was a fit and proper person to have the care, custody and control of the minor child. These findings fail as a matter of law in that we have no substantive factual basis for an adequate review of the matters resolved below. As we have stated previously

   "' . . . when the court fails to find facts so that this Court can determine that the order is adequately supported by competent evidence and the welfare of the child subserved, then the order entered thereon must be vacated and the case remanded for detailed findings of fact.'" (Citations omitted.) *Powell v. Powell, supra,* at 698.

The order is vacated and the cause remanded.

Judges HEDRICK and ARNOLD concur.