BONKOWSKY, APPELLANT, *v.* BONKOWSKY, APPELLEE.

[Cite as Bonkowsky v. Bonkowsky (1982), 69 Ohio St. 2d 152.]

(No. 81-270—Decided February 10, 1982.)

*Messrs. Weisman, Goldberg & Weisman, Mr. Fred Weisman* and *Mr. Howard W. Mishkind,* for appellant.

*Messrs. Kitchen, Messner & Deery* and *Mr. Charles W. Kitchen,* for appellee.

*Per Curiam.* Appellant raises the previously reviewed issues that interspousal immunity policy discriminates against spouses without a valid or rational purpose, and deprives them of equal protection of the law under Section 2, Article I of the Ohio Constitution and under the Fourteenth Amendment to the United States Constitution. The additional argument raised by appellant is that such policy should not be followed in this state where there is shown to be liability insurance present under which policy the spouse's claims may be satisfied.

The policy in Ohio relative to the principle of interspousal immunity has most recently been reaffirmed in *Varholla* v. *Varholla* (1978), 56 Ohio St. 2d 269, wherein the majority of this court (Justice William B. Brown, dissenting), at pages 269-270, stated:

"The same issue was before this court in *Lyons* v. *Lyons* (1965), 2 Ohio St. 2d 243, where we held that such actions were barred by interspousal immunity. Our reasons were threefold: (1) the immunity promotes marital harmony by discouraging otherwise litigious spouses from pursuing real or fanciful claims to the detriment of the family unit; (2) the immunity prevents fraud and collusion at the expense of tactically disadvantaged insurance companies; and (3) as this involves a matter of public policy, changes in this area must emanate from the General Assembly, not the courts."

Relative to the argument that the constitutionality of this principle should be viewed in the same manner as this court had determined the unconstitutionality of R. C. 4515.02, the guest statute in Ohio, this court stated at page 270, in the opinion:

"We think it sufficient to state that the interspousal immunity doctrine, with its inherent differential treatment of spouses and non-spouses, reasonably relates to the legitimate state interest of fostering marital harmony and preventing fraud and collusion. The difference between this doctrine and R. C. 4515.02 lies in the higher state concern for regulating marriage and the greater potential for fraud stemming from the marital relationship, where an insured defendant spouse

stands to benefit personally from losing a lawsuit instituted by his spouse. * * * ''

Appellant argues here, as appellant did in *Varholla,* that the reasons supportive of the basic principle of interspousal tort immunity are no longer viable in Ohio. Answering, this court, in *Varholla,* held that appellant's contention could not be accepted "in disregard of clear precedent."

We are in agreement with the thought that legal precedent should not be a straitjacket to an appropriate change of the legal policies of this state, especially where those policies are established by the common law pronouncements of this court. However, where this court has recently reviewed and spoken upon the viability of such policies, precedent of such pronouncements should be given a great deal of weight.

This is the stance of the issues raised herein challenging the doctrine of interspousal immunity. Having recently considered these policies in *Varholla,* and since nothing of import affecting that holding has subsequently taken place—other than the relatively short passage of time—we shall adhere to our previously pronounced position.

Additionally, we feel it necessary to point out that the fact that an insurance policy was in existence here is not a distinguishing factor in this case, as compared with *Lyons* or *Varholla, supra.* As previously noted, this court, in *Varholla,* discussed the interspousal immunity doctrine specifically in the context of an insured defendant spouse. In like manner, in *Lyons,* the court made specific reference to the involvement of insurance where, at page 245, it was stated: "There is the real danger of fraud or collusion between the spouses in such suits against each other, where insurance is involved."

Based on the foregoing, the judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

CELEBREZZE, C. J., LOCHER, HOLMES and KRUPANSKY, JJ., concur.

W. BROWN, SWEENEY and C. BROWN, JJ., dissent.

LOCHER, J., concurring. In order to analyze the controversy surrounding the doctrine of interspousal immunity,

one need only consider one simple question: is the doctrine viable in today's society? I agree with the opinion of the court that the doctrine *is* viable. To hold otherwise would violate the integrity of the family. I also concur in the judgment and reasoning in that opinion, but I wish to expand on one point.

During the past quarter century, or so, this country has endured numerous threats to the integrity of her fundamental institutions. Critics of the doctrine of interspousal immunity have been at the vanguard of an unrelenting assault upon the family as an institution. The family is rebounding, however.

Critics of the doctrine focus almost exclusively on compensation for injuries. Their argument presumes that insurance will satisfy all needs. Yet, they never explain why suits between uninsured spouses are beneficial. Likewise, they ignore the capacity of the insurance industry to fill any gaps in coverage and prevent familial economic disasters through first-party health, life and income insurance.

These same critics contend that a failure to provide insurance compensation for injuries places a potentially unbearable economic strain on the family *unit*. This argument, however, presumes that spouses remain in economic *unity*, or at least mutuality. Under either interpretation, it would appear that society has indeed changed very little.

We should not allow ourselves to presume that every aspect of the so-called "social experiment" of the last two or three decades will endure into the future.[1] As a people, Americans are getting back to the basics. The family is the basic social unit; and a husband and a wife are the beginnings of a family. As long as that is the case, we should find some means other than interspousal litigation to compensate husbands and wives for their injuries.

CELEBREZZE, C. J., concurs in the foregoing concurring opinion.

WILLIAM B. BROWN, J., dissenting. The majority's decision in this case today should come as a great surprise and be of great concern to the people of Ohio, especially to the female contingent. In upholding the doctrine of interspousal immun-

---

[1] Note that most of the cases abolishing the doctrine of interspousal immunity were decided within the last 20 years.

ity, the majority seemingly gives credence to the theory upon which this doctrine was established, namely that a husband and wife are one. (See, generally, 1 Blackstone's Commentaries 442 [1765].) This unity principle is a legal fiction which has long been used to preclude a wife from enjoying the same full legal rights as are afforded her husband. This principle is based on the belief that a wife is the property of her husband, and is totally subordinate to and dependent upon him. In a spirit of equality, the General Assembly passed the Married Women's Act which to a large extent put the wife on an equal legal footing with her husband. The time is long overdue that this court as well recognize the legal individuality of a wife. By abrogating interspousal immunity, this court would emancipate all spouses from the vestiges of this archaic doctrine, and preserve to all every right which they had prior to marriage. I have read the majority opinion, and because I believe it represents an archaic viewpoint based on hollow and unenlightened reasoning, I must respectfully register my strong disapproval.

I previously stated the basis for my objections to the retention of interspousal immunity in my dissent in *Varholla* v. *Varholla* (1978), 56 Ohio St. 2d 269, 271-275. Briefly, I found the following four major flaws in the majority's reasoning. First, the argument that abolishment of interspousal immunity is a legislative rather than a judicial task is not now nor has it ever been persuasive. The doctrine of interspousal immunity had its origins in common law, and as a judicially created doctrine, it may be judicially abolished. (*Sears* v. *Cincinnati* [1972], 31 Ohio St. 2d 157, 161, overruling paragraph one of the syllabus in *Hyde* v. *Lakewood* [1965], 2 Ohio St. 2d 155; *Muskopf* v. *Corning Hospital Dist.* [1961], 55 Cal. 2d 211, 359 P. 2d 457; *Molitor* v. *Kaneland Community United District No. 302* [1959], 18 Ill. 2d 11, 25, 163 N.E. 2d 89.)

Next, the rationale underlying the claim that interspousal immunity prevents fraud and collusion is indeed strained. It is unlikely that "a wife's love for her husband is such that she is more likely to bring a false suit against him than a genuine one," (Prosser on Torts [4 Ed.] 863, Section 122) and a similar collusive argument was unanimously rejected by this court when it declared Ohio's guest statute unconstitutional in

*Primes* v. *Tyler* (1975), 43 Ohio St. 2d 195. In addition, there are numerous safeguards against fraudulent claims built into the judicial system.[2]

Thirdly, the justification of interspousal immunity on the grounds that it promotes marital harmony is specious and unfounded. "To conclude that forbidding spouses to sue one another promotes domestic peace is a *non sequitur*. Marital harmony either exists or it does not. The harmonious marriage will not be hurt by allowing one spouse to benefit from the insurance coverage of the other; and the unhappy marriage will not be helped by denying legal rights to an already disgruntled spouse." *Varholla, supra,* at page 273.

Finally, in my opinion, interspousal immunity is unconstitutional and should hence be abolished. The same reasoning used by this court to declare Ohio's guest statute unconstitutional in *Primes, supra,* is also applicable to this cause.

"Given the fact that spouses denied the right to sue under the interspousal immunity doctrine are discriminated against in the same manner and for equally unconvincing reasons as are friends denied the right to sue under a guest statute, I submit that the doctrine of interspousal immunity violates the Equal Protection Clause of the United States Constitution.

"Interspousal immunity also creates a conclusive presumption which, like the one created by the guest statute, unconstitutionally denies due process.

" ' * * * [P]ermanent irrebuttable presumptions have long been disfavored under the Due Process Clauses of the Fifth and Fourteenth Amendments,' " especially when they are " 'not necessarily or universally true in fact, and when the state has reasonable alternative means of making the crucial determination.' *Vlandis* v. *Kline* (1973), 412 U. S. 441, 446 and 452." *Id.,* at page 275.

I continue to adhere to and advocate these positions, and, at this time, I would like to reemphasize and add a few points.

The majority opinion in this case stresses that the retention of interspousal immunity will preserve marital harmony. Yet, from a realistic and practical point of view, it is difficult to see just how interspousal immunity is effective in fostering

---

[2] Consider, for example, trial devices such as pretrial discovery and cross-examination, as well as the deterrent effect of a perjury charge.

and reinforcing domestic tranquility. In recent years, the cost of medical treatment and hospital bills for an injured survivor of a negligent act has increased greatly. This factor, coupled with the probable loss of income and services if the injury to the spouse is serious, will likely cause financial strains which are beyond the capabilities of the average family. These financial burdens can be equally if not more troubling than the instigation of a lawsuit for negligence. In light of the fact that financial hardship is a major factor in divorce,[3] denying any recovery whatsoever to a spouse who has perhaps been crippled for life due to the negligence of his or her mate, especially where recovery can be had from an insurance company, is more likely to jeopardize a marriage rather than to safeguard it.

In Ohio, both statutory and case law permit spouses to sue each other. Ohio's Married Women's Property Act[4] allows suits between spouses in contracts and personal property claims. Moreover, in *Damm* v. *Elyria Lodge No. 465* (1952), 158 Ohio St. 107, this court permitted a wife of a deceased member of a voluntary association to maintain an action in tort against the association for a tort committed against her during her husband's lifetime. Interspousal immunity has also been abrogated for intentional misconduct. *Kobe* v. *Kobe* (1978), 61 Ohio App. 2d 67. It is inconceivable that an action for personal injury would disrupt a marriage to any greater degree than would an action for conversion or in contract.

Furthermore, upholding the doctrine of interspousal immunity on the basis of the possibility of fraud and collusion belies the centuries-old trust in our jury system. I, for one, am confident that our judicial system is well equipped to sift out fraudulent claims.

Likewise, the insurance industry is competent to deal with collusive claims. To believe that there is something called a "disadvantaged" insurance company is a far bigger myth than has ever been perpetrated under the doctrine of *stare decisis*.[5]

---

[3] See Cutright, Income and Family Events: Marital Stability, 33 J. Marr. & Fam. 291 (1971).

[4] R. C. 2307.09 *et seq.*

[5] The abrogation of interspousal immunity will not leave insurance companies without recourse. Insurance companies can either exempt spouses from coverage (see

In my 45 years as a lawyer and judge, I have noticed that insurance companies have the best lawyers, the best investigators and the best referral systems. There is little doubt that insurance companies are more than able to protect themselves against fraudulent claims.

I agree with the assessment of the court in *Immer* v. *Risko* (1970), 56 N.J. 482, 495, 267 A. 2d 481, that "[i]n a day when automobile accidents are unfortunately becoming so frequent and injuries suffered by passengers are often so severe, it seems unjust to deny the claims of many because of the potentiality for fraud by the few." Indeed, such a potentiality did not restrain this court from unanimously holding the guest statute unconstitutional. See *Primes* v. *Tyler, supra.* And this unreasonable and minimal fear should not now deter this court from abolishing interspousal immunity.

Finally, the doctrine of interspousal immunity runs afoul of the goal of tort law. The major goal of tort law is to compensate the victim rather than to punish the tortfeasor.[6] Marital status should not, and cannot, be determinative of the remedy available to redress an injury.

This court's persistence in preserving interspousal immunity is not shared by other jurisdictions. Courts are continuing to abandon the rule of interspousal immunity with dispatch, and it remains operative only in a minority of jurisdictions.[7] By virtue of this decision of this court today, Ohio's law

Casey, The Trend of Interspousal and Parental Immunity - Cakewalk Liability, 45 Ins. Counsel J. 321 [1978] ), or raise the premiums for such coverage.

[6] Prosser on Torts (4 Ed.), page 6.

[7] The following states have abolished interspousal tort immunity in negligence actions similar to the instant action. This list has expanded even since the Court of Appeals' decision herein, and now totals 31 states, as follows:

Alabama: *Penton* v. *Penton* (1931), 223 Ala. 282, 135 So. 481; Alaska: *Cramer* v. *Cramer* (Alaska 1963), 379 P. 2d 95; Arkansas: *Leach* v. *Leach* (1957), 227 Ark. 599, 300 S.W. 2d 15; California: *Klein* v. *Klein* (1962), 58 Cal. 2d 692, 376 P. 2d 70, 26 Cal. Rptr. 102; Colorado: *Rains* v. *Rains* (1935), 97 Colo. 19, 46 P. 2d 740; Connecticut: *Bushnell* v. *Bushnell* (1925), 103 Conn. 583, 131 A. 432; Idaho: *Lorang* v. *Hays* (1949), 69 Idaho 440, 209 P. 2d 733; Indiana: *Brooks* v. *Robinson* (1972), 259 Ind. 16, 284 N.E. 2d 794; Iowa: *Shook* v. *Crabb* (Iowa 1979), 281 N.W. 2d 616; Kentucky: *Brown* v. *Gosser* (Ky. 1953), 262 S.W. 2d 480; Maine: *MacDonald* v. *MacDonald* (Me. 1980), 412 A. 2d 71; Massachusetts: *Lewis* v. *Lewis* (1976), 370 Mass. 619, 351 N.E. 2d 526; Michigan: *Hosko* v. *Hosko* (1971), 385 Mich. 39, 187 N.W. 2d 236; Minnesota: *Beaudette* v. *Frana* (1969), 285 Minn. 366, 173 N.W. 2d 416; Nebraska: *Imig* v. *March*

will continue to march in a lockstep toward the judicial philosophy of the Victorian era.

The majority opinion rationalizes this backward march on the basis of *stare decisis*.[8] "As to the fundamental nature and the importance of *stare decisis,* there is no doubt. It lies at the heart of the common law. By this rule, our society has preserved the best of the wisdom and the morality of past ages. Wisdom and morality, however, are not immutable universals of the scholastic philosophers; they are to be modified by each new generation.

"When, however, a rule of law is judge-made, and the reasons for its use have vanished, the court should not

(1979), 203 Neb. 537, 279 N.W. 2d 382; Nevada: *Rupert* v. *Stienne* (1974), 90 Nev. 397, 528 P. 2d 1013; New Hampshire: *Morin* v. *Letourneau* (1959), 102 N.H. 309, 156 A. 2d 131; New Jersey: *Immer* v. *Risko* (1970), 56 N.J. 482, 267 A. 2d 481; New Mexico: *Maestas* v. *Overton* (1975), 87 N.M. 213, 531 P. 2d 947; New York: N. Y. Gen. Oblig. Law (McKinney 1978), Section 3-313; North Carolina: *Roberts* v. *Roberts* (1923), 185 N.C. 566, 118 S.E. 9; North Dakota: *Fitzmaurice* v. *Fitzmaurice* (1932), 62 N.D. 191, 242 N.W. 526; Oklahoma: *Courtney* v. *Courtney* (1938), 184 Okla. 395, 87 P. 2d 660; Rhode Island: *Digby* v. *Digby* (R.I. 1978), 388 A. 2d 1; South Carolina: *Pardue* v. *Pardue* (1932), 167 S.C. 129, 166 S.E. 101; South Dakota: *Scotvold* v. *Scotvold* (1941), 68 S.D. 53, 298 N.W. 266; Vermont: *Richard* v. *Richard* (1973), 131 Vt. 98, 300 A. 2d 637; Virginia: *Surratt* v. *Thompson* (1971), 212 Va. 191, 183 S.E. 2d 200; Washington: *Freehe* v. *Freehe* (1972), 81 Wash. 2d 183, 500 P. 2d 771; West Virginia: *Coffindaffer* v. *Coffindaffer* (W. Va. 1978), 244 S.E. 2d 338; Wisconsin: *Wait* v. *Pierce* (1926), 191 Wis. 202, 209 N.W. 475.

There is a long list of well-recognized scholars and commentators who have urged legal equality for spouses for years. The list includes the following:

Prosser on Torts (4 Ed.), Section 122; 1 Harper & James, The Law of Torts, Section 8.10 (1956); Notes, 28 Clev. St. L. Rev. 115 (1979); Comments, The Impact of Abrogation of Interspousal Immunity in Nebraska, 13 Creighton L. Rev. 423 (1979); Case Notes, Domestic Relations—Abrogation of Interspousal Immunity—An Analytical Approach, 19 De Paul L. Rev. 590 (1970); Recent Decisions, 13 Duq. Univ. L. Rev. 156 (1974); Greenstone, Abolition of Intrafamilial Immunity, 7 The Forum 82 (1972); McCurdy, Torts Between Persons in Domestic Relation, 43 Harv. L. Rev. 1030 (1930); Notes, Litigation Between Husband and Wife, 79 Harv. L. Rev. 1650 (1966); Comments, 36 Mont. L. Rev. 251 (1975); Comments, 12 New Eng. L. Rev. 333 (1976); Recent Dev., 27 Ohio St. L.J. 550 (1966), 40 Ohio St. L.J. 771 (1979); Comments, 3 Rut.-Cam. L.J. 183 (1971); Case Comments, 11 Suffolk U.L. Rev. 1214 (1977); Comment, 47 Tennessee L. Rev. 123 (1979).

[8] While the majority purports that it is bound by *stare decisis* to uphold the doctrine of interspousal immunity, it is interesting to note that it was not until 1965 in *Lyons* v. *Lyons,* 2 Ohio St. 2d 243, that this court first explicitly recognized interspousal immunity. See, generally, Sullivan, Intra-Family Immunity and the Law of Torts in Ohio, 18 W. Res. L. Rev. 447 (1967).

perpetuate it until petrification. A rule that has outlived its usefulness should be changed. Such an approach to *stare decisis* was urged by Justice Cardozo in his outstanding book, The Nature of the Judicial Process, pp. 150-152:

" 'But I am ready to concede that the rule of adherence to precedent, though it ought not to be abandoned, ought to be in some degree relaxed. I think that when a rule, after it has been duly tested by experience, has been found to be inconsistent with the sense of justice or with the social welfare, there should be less hesitation in frank avowal and full abandonment. We have had to do this sometimes in the field of constitutional law. Perhaps we should do so oftener in fields of private law where considerations of social utility are not so aggressive and insistent. There should be greater readiness to abandon an untenable position when the rule to be discarded may not reasonably be supposed to have determined the conduct of the litigants, and particularly when in its origin it was the product of institutions or conditions which have gained a new significance or development with the progress of the years. In such circumstances, the words of Wheeler, J., in *Dwy* v. *Connecticut Co.,* 89 Conn. 74, 99 (92 A. 883, L. R. A. 1915E, 800, Ann. Cas. 1918D, 270), express the tone and temper in which problems should be met:

" ' "That court best serves the law which recognizes that the rules of law which grew up in a remote generation may, in the fullness of experience, be found to serve another generation badly, and which discards the old rule when it finds that another rule of law represents what should be according to the established and settled judgment of society, and no considerable property rights have become vested in reliance upon the old rule. It is thus great writers upon the common law have discovered the source and method of its growth, and in its growth found its health and life. It is not and it should not be stationary. Change of this character should not be left to the Legislature." ' " *Thacker* v. *Bd. of Trustees of Ohio State Univ.* (1973), 35 Ohio St. 2d 49, 70-71 (William B. Brown, J., dissenting).[9]

---

[9] Indeed this court found no need to defer to the General Assembly, for example, when it abrogated charitable hospital immunity in *Avellone* v. *St. John's Hospital* (1956), 165 Ohio St. 467 or governmental immunity for municipally-owned hospitals in *Sears* v. *Cincinnati* (1972), 31 Ohio St. 2d 157.

The doctrine of *stare decisis* must not be so narrowly pursued that the body of common law is forever encased in a straightjacket. As was stated in *Cleveland Elec. Illuminating Co. v. Pub. Util. Comm.* (1976), 46 Ohio St. 2d 105, 119, fn. 8, "[t]his court is more accustomed to detecting and correcting the errors of others than its own. It is to be hoped that we will always remain willing to correct them whether found in either place." It is unfortunate that this court has unblinkingly kept its gaze to the past, has failed to see the error in its way and has declined to give the doctrine of interspousal immunity the quick burial it so rightfully deserves.

SWEENEY and C. BROWN, JJ., concur in the foregoing dissenting opinion.

CLIFFORD F. BROWN, J., dissenting. For the reasons so perspicaciously expressed by Justice William B. Brown in his dissent in *Varholla* v. *Varholla* (1978), 56 Ohio St. 2d 269, at pages 271-275, in support of the abolition of the interspousal immunity rule in negligence actions, I dissent.

As in *Varholla*, this court again asserts the same outmoded reasoning for the preservation of interspousal immunity, namely, (1) promotion of marital harmony; (2) prevention of fraud and collusion " 'at the expense of tactically disadvantaged insurance companies,' " and (3) the belief that any change in interspousal immunity must emanate from the General Assembly. These reasons are created by a judiciary out of touch with the realities of modern life. Each has been thoroughly analyzed and demolished in the *Varholla* dissent.

The right of the wife to bring other legal actions against her husband reveals the hypocrisy of the claimed advancement of marital harmony through interspousal immunity in negligence actions. There is no sound reason to permit a wife to sue her husband for money loaned, see *Hart* v. *Sarvis* (1894), 3 N.P. 316, or for damages for injuries intentionally inflicted, see *Kobe* v. *Kobe* (1978), 61 Ohio App. 2d 67, and to deny the same spouse her right to maintain a tort action against her husband for his negligence, especially when he procured insurance to protect himself for that very purpose. If marital harmony is the purpose of the immunity rule then the wife should have no right to bring *any* legal action against her husband.

Domestic harmony and tranquility will not be disrupted to any greater degree by a damage action of the wife against her husband for negligently causing her injury than it would by civil action in ejectment, partition, contract or intentional tort. *Klein* v. *Klein* (1962), 58 Cal. 2d 692, 376 P. 2d 70; *Shook* v. *Crabb* (Iowa 1979), 281 N.W. 2d 616; *Coffindaffer* v. *Coffindaffer* (W. Va. 1978), 244 S.E. 2d 338; *Freehe* v. *Freehe* (1972), 81 Wash. 2d 183, 500 P. 2d 771; *Rupert* v. *Stienne* (1974), 90 Nev. 397, 528 P. 2d 1013; *Immer* v. *Risko* (1970), 56 N.J. 482, 267 A. 2d 481. On the contrary, the denial of a just remedy to the injured spouse against her husband in a negligence action will adversely affect marital harmony.[10]

The second reason for interspousal immunity advanced in the *Varholla* case, *i.e.*, to prevent fraud and collusion " 'at the expense of *tactically disadvantaged insurance companies,' "* borders on the absurd.[11] The investigative tools and skilled legal counsel available to insurance companies, along with discovery and trial procedures designed to eliminate surprise and reveal all the facts (*e.g.* Civ. R. 26 through 37, 56), will easily meet the challenge of spurious or fraudulent claims. These same factors negate any claim that insurance companies are "tactically disadvantaged." To conclude otherwise evinces a facility to remain unaware of the abilities of our judges and jurors and the realities of our adversary system. *MacDonald* v. *MacDonald* (Me. 1980), 412 A. 2d 71; *Merenoff* v. *Merenoff* (1978), 76 N.J. 535, 388 A. 2d 951; *Beaudette* v. *Frana* (1969), 285 Minn. 366, 173 N.W. 2d 416; *Brown* v. *Gosser* (Ky. 1953), 262 S.W. 2d 480; *Immer* v. *Risko, supra; Coffindaffer* v. *Coffindaffer, supra.*

The third reason advanced for interspousal immunity, that

[10] The marital harmony contention evaporates when one considers the list of 31 judicially progressive states which have abolished interspousal immunity in negligence actions. See dissenting opinion of Justice William B. Brown, *supra,* at fn. 7.

[11] The fraud and collusion reason presupposes that spouses are dishonest when the injured spouse claims compensation from the negligent spouse and his insurer. Yet, if in a later accident the same negligent spouse injures his sister, that sister is not barred by any immunity rule from recovering damages from him. If fraud and collusion is not urged to bar recovery by a sister, it follows that sisters are more honest and therefore less likely to perpetrate fraud than wives. This assumption brings to mind a quote from Charles Dickens: " 'If the law supposes *that,*' said Mr. Bumble, 'the law is a ass, a idiot.' " *Oliver Twist,* Chapter 51. These words may well be wiser than all the legal precedent cited in support of the interspousal immunity rule.

164

the change abolishing it must be made by the General Assembly, is an abdication of the judicial function and completely without merit. Since the courts created the interspousal immunity doctrine, the courts can abolish it. *Varholla, supra,* at page 272, citing therein *Sears* v. *Cincinnati* (1972), 31 Ohio St. 2d 157. See, also, *Lewis* v. *Lewis* (1976), 370 Mass. 619, 351 N.E. 2d 526; *Burns* v. *Burns* (1974), 21 Ariz. App. 337, 519 P. 2d 190; *Shook* v. *Crabb, supra.*[12]

I see no reason to preserve interspousal immunity, based on any statement such as, "Having recently considered these policies in *Varholla,* and since nothing of import affecting that holding has subsequently taken place—other than the relatively short passage of time—we shall adhere to our previously pronounced position."[13] On the contrary, as I pointed out in my

[12] The apt words of the concurring judges of the Court of Appeals in this case concerning suggested changes in the interspousal immunity doctrine should be heeded. Judge Day incisively stated:

"Were there no writing on the slate I would not follow a spousal immunity policy which seems to me medieval, particularly in an insured case.

" * * *

"Accordingly, my concurrence is reluctant. The principles announced in Justice William Brown's dissent seem to me to represent the logical, and incidentally, majority view in the country. * * * "

Judge Patton pointedly and succinctly stated:

" * * * I have examined the reasoning set forth by the Ohio Supreme Court in *Varholla* v. *Varholla* (1978), 56 Ohio St. 2d 269, and I find it most difficult to rationalize the overturning of the 'guest statute' and the preservation of the interspousal immunity doctrine.

" * * *

" * * * The original purposes for the doctrine were laudable but they have become archaic in light of the sophisticated ability of insurance companies, the refinement of court room evidentiary processes, and the social patterns of society."

We should also heed our own advice concerning *stare decisis* as set forth in *Cleveland Elec. Illuminating Co.* v. *Pub. Util. Comm.* (1976), 46 Ohio St. 2d 105 at page 119, fn. 8, where we stated:

"This opinion has been a lengthy one. Its intent was to make fully clear why this court today overrules an opinion rendered without dissent only a year ago. This court is more accustomed to detecting and correcting the errors of other than its own. It is to be hoped that we will always remain willing to correct them whether found in either place."

[13] The decision today retaining interspousal immunity because this court reiterated it in 1978 in *Varholla* is maintaining the status quo to the point of sheer nonsense. Such rationale will only continue to make Ohio the source of laughter in the area of tort law among law students and legal commentators in other jurisdiction. See

concurring opinion in *Shroades* v. *Rental Homes* (1981), 68 Ohio St. 2d 20, at page 28: "*Stare decisis* does not mean that a decision of this court cannot be modified or overruled in the near or distant future 'where no additional relevant factors are presented which would alter our prior pronouncement on the subject.' "

*Stare decisis* should never be used as an excuse to avoid overruling a judicial precedent only a few days or weeks old if the interests of justice require it. Indeed, justice is the only purpose for which courts exist.

*Varholla, supra,* and *Lyons* v. *Lyons* (1965), 2 Ohio St. 2d 243, never served the purpose of justice. They should never have been the law and they deserve to be overruled at the earliest possible moment.

W. BROWN and SWEENEY, JJ., concur in the foregoing dissenting opinion.

---

*Shroades* v. *Rental Homes* (1981), 68 Ohio St. 2d 20, concurring opinion at pages 27-29, and *Leichtamer* v. *American Motors Corp.* (1981), 67 Ohio St. 2d 456, concurring opinion at pages 476-477.