KARAM ET AL., APPELLANTS, *v.* ALLSTATE INSURANCE COMPANY ET AL., APPELLEES.

(No. 81-958—Decided June 23, 1982.)

228

*Messrs. Wolske & Blue* and *Mr. Walter J. Wolske, Jr.*, for appellants.

*Messrs. Crabbe, Brown, Jones, Potts & Schmidt, Mr. Theodore D. Sawyer* and *Mr. David J. Richards*, for appellees.

STEPHENSON, J.   This appeal requires us to determine the scope of the Ohio rule of parental immunity which bars the recovery in a tort action by a child against its parent based upon personal injuries proximately caused by negligent conduct of the parent. Appellants, in their first proposition of law, do not argue for a total abrogation of the rule, but rather urge this court to hold the rule inapplicable where, as here, the parent alleged to be negligent is deceased and liability insurance proceeds alone would be the source for the payment of any judgment granted in favor of the child.

The rule that a parent is immune from liability in a tort action instituted against the parent by a child is universally recognized as one judicially created in *Hewlett* v. *George* (1891), 68 Miss. 703, 9 So. 885, and, unlike interspousal immunity, has no common law origin. The rationale in *Hewlett* for the rule is that such an action distrubs the domestic peace and harmony of the family and is contrary to public policy.

After its pronouncement in *Hewlett*, the rule, subject to certain exceptions, was adopted in practically all jurisdictions and represented the overwhelming weight of authority.[2] A

---

[2] The generally recognized exceptions were summarized in *Gibson* v. *Gibson* (1971), 3 Cal. 3d 914, at page 918, 92 Cal. Rptr. 288, 290, 479 P. 2d 648, thusly:

principal reason articulated in support of the rule, in addition to the family tranquility reason, was the danger of fraud and collusion by reason of the widespread existence of liability insurance. *Sorensen* v. *Sorensen* (1975), 369 Mass. 350, 339 N.E. 2d 907; *Guess* v. *Gulf Ins. Co.* (1981), 96 N.M. 27, 627 P. 2d 869; *Streenz* v. *Streenz* (1970), 106 Ariz. 86, 471 P. 2d 282.

Additional reasons relied upon to support the rule were (1) depletion of the family exchequer, (2) the possibility of inheritance by the parent of the amount recovered in damages by the child, and (3) interference with parental care, discipline, and control. *Trevarton* v. *Trevarton* (1963), 151 Colo. 418, 378 P. 2d 640; *Borst* v. *Borst* (1952), 41 Wash. 2d 642, 251 P. 2d 149; 43 Harvard L. Rev. 1030, 1056.

In a growing number of jurisdictions the parental immunity rule has been in many recent cases reconsidered and abrogated, mostly in part,[3] upon the basis that the traditional

"No sooner had American courts, including our own, embraced the parental immunity doctrine than they began to fashion a number of qualifications and exceptions to it. In *Martinez* v. *Southern Pacific Co., supra,* 45 Cal. 2d 244, we allowed an *emancipated* minor to sue her parent for simple negligence; in *Emery* v. *Emery* (1955), 45 Cal. 2d 421 [289 P. 2d 218], we held that wilful or malicious torts were not within the scope of the immunity. Courts in other states compounded the doctrine's idiosyncrasies in decisions permitting tort actions by minors against the estate of a deceased parent (*Davis* v. *Smith* (3d Cir. 1958), 253 F. 2d 286; *Dean* v. *Smith* (1965), 106 N.H. 314 [211 A. 2d 410]; *Brennecke* v. *Kilpatrick* (Mo. 1960), 336 S.W. 2d 68); against the parent in his business capacity (*Signs* v. *Signs* (1952), 156 Ohio St. 566 [103 N.E. 2d 743]; *Borst* v. *Borst* (1952), 41 Wash. 2d 642 [251 P. 2d 149]; *Lusk* v. *Lusk* (1932), 113 W. Va. 17 [166 S.E. 538]; *Dunlap* v. *Dunlap, supra,* 84 N.H. 352); and against the parent's employer under *respondeat superior* for the tort of the parent within the scope of his employment. (*Stapleton* v. *Stapleton* (1952), 85 Ga. App. 728 [70 S.E. 2d 156]; *O'Connor* v. *Benson Coal Co.* (1938), 301 Mass. 145 [16 N.E. 2d 636]; *Mi-Lady Cleaners* v. *McDaniel* (1938), 235 Ala. 469 [179 So. 908, 116 A.L.R. 639]; *Chase* v. *New Haven Waste Material Corporation* (1930), 111 Conn. 377 [150 A. 107, 68 A.L.R. 1497].)"

[3] The identifiable reason for only partial abrogation of the rule is a general consensus of opinion that certain areas of conduct inherent in the parent-child relationship involving the exercise of discretion must be entitled to immunity. See Section 895G of the Restatement of Torts 2d (1979) and commentary thereto. A marked lack of unanimity in accommodating this area of immunity exists in those jurisdictions which have abrogated the immunity rule. Courts have ranged from undertaking to judicially enunciate certain exceptions, as in *Goller* v. *White* (1963), 20 Wis. 2d 402, 122 N.W. 2d 193, *i.e.* "(1) [w]here the alleged negligent act involves an exercise of parental authority over the child, and (2) where the alleged negligent act involves an exercise of ordinary parental discretion with respect to the provision of food, clothing, housing,

reasons relied upon to support the rule are no longer persuasive, particularly the domestic tranquility and collusion rationale.[4] See Annotation 41 A.L.R. 3d 904, Liability of Parent

medical and dental services, and other care" (*Id.* at 413); to adoption in *Gibson* v. *Gibson, supra* (3 Cal. 3d 914), at page 921, of immunity under a test of "what would an ordinary reasonable and prudent *parent* have done in similar circumstances ?"; confinement to abrogation in negligent driving cases only with precise areas of immunity to be subsequently developed in future adjudication, *Hebel* (Alaska 1967), 435 P. 2d 8; together with two jurisdictions restricting recovery solely to liability insurance proceeds, *Sorensen* v. *Sorensen* (1975), 369 Mass. 350, 339 N.E. 2d 907, and *Williams* v. *Williams* (Del. 1976), 369 A. 2d 669. The *Goller* exceptions have been criticized in *Gibson* v. *Gibson, supra,* at page 921, and *Anderson* v. *Stream* (Minn. 1980), 295 N.W. 2d 595, 598; the reasonable parent exception has been the subject of criticism in *Pedigo* v. *Rowley* (1980), 101 Idaho 201, 610 P. 2d 560; and the abrogation of immunity only in automobile negligence cases together with restricting recovery to insurance proceeds rejected in *Black* v. *Solmitz* (Me. 1979), 409 A. 2d 634, 639, as "[t]hose limitations seem to us objectionable as suggesting that the decision to restrict immunity is based on expediency rather than on correct legal principles. In our view such decisions are difficult to defend against the charge that they effect a result more appropriately reserved for legislation. Furthermore, the Massachusetts rule tailoring abrogation to the amount of the parent's automobile liability insurance leads to difficulties by unavoidably introducing the fact of defendant's insurance, and the amount of it, as elements of a claim or defense."

Given the inability of courts to agree, when the parental immunity rule is partially abolished, of the areas in which it should be retained, it would appear a reasonable conclusion that abrogation in any event should emanate from the General Assembly with the scope of immunity abolished and remaining precisely drawn for the benefit of litigants, bench and Bar.

[4] The parental immunity doctrine has not been initially adopted, or if adopted, has been abrogated in whole or in part in the following jurisdictions:

1. Alaska, *Hebel* v. *Hebel, supra.*
2. Arizona, *Streenz* v. *Streenz* (1970), 106 Ariz. 86, 471 P. 2d 282.
3. California, *Gibson* v. *Gibson, supra.*
4. Connecticut, Gen. Stat. Section 52-572c (1981 Rev.).
5. Delaware, *Williams* v. *Williams, supra.*
6. Hawaii, *Tammashiro* v. *De Gama* (1969), 51 Haw. 74, 450 P. 2d 998.
7. Iowa, *Turner* v. *Turner* (1981), 304 N.W. 2d 786.
8. Kansas, *Nocktonick* v. *Nocktonick* (1980), 227 Kan. 785, 611 P. 2d 135.
9. Kentucky, *Thurman* v. *Etherton* (1970), 459 S.W. 2d 402; *Rigdon* v. *Rigdon* (1971), 465 S.W. 2d 921.
10. Massachusetts, *Sorensen* v. *Sorensen, supra.*
11. Maine, *Black* v. *Solmitz, supra.*
12. Michigan, *Plumley* v. *Klein* (1972), 388 Mich. 1, 199 N.W. 2d 169.
13. Minnesota, *Silesky* v. *Kelman* (1968), 281 Minn. 431, 161 N.W. 2d 631; *Anderson* v. *Stream, supra.*
14. Missouri, *Fugate* v. *Fugate* (1979), 582 S.W. 2d 663.

for Injury to Unemancipated Child Caused by Parent's Negligence.

The issue of parental immunity was first before this court in *Signs* v. *Signs* (1952), 156 Ohio St. 566. In *Signs,* a seven-

15. New Hampshire, *Briere* v. *Briere* (1966), 107 N.H. 432, 224 A. 2d 588.

16. New Jersey, *France* v. *A.P.A. Transport Corp.* (1970), 56 N.J. 500, 267 A. 2d 490.

17. New Mexico, *Guess* v. *Gulf Ins. Co.* (1981), 96 N.M. 27, 627 P. 2d 869.

18. New York, *Gelbman* v. *Gelbman* (1969), 23 N.Y. 2d 434, 245 N.E. 2d 192.

19. Nevada, *Rupert* v. *Steinne* (1974), 90 Nev. 397, 528 P. 2d 1013.

20. North Carolina, Gen. Stat. Section 1-539.21 (1981 Supp.).

21. North Dakota, *Neuelle* v. *Wells* (1967), 154 N.W. 2d 364.

22. Pennsylvania, *Falco* v. *Pados* (1971), 444 Pa. 372, 282 A. 2d 351.

23. South Carolina, *Elam* v. *Elam* (1980), 275 S.C. 132, 268 S.E. 2d 109.

24. Virginia, *Smith* v. *Kauffman* (1971), 212 Va. 181, 183 S.E. 2d 190.

25. Vermont, *Wood* v. *Wood* (1977), 135 Vt. 119, 370 A. 2d 191.

26. Washington, *Merrick* v. *Sutterlin* (1980), 93 Wash. 2d 411, 610 P. 2d 891.

27. West Virginia, *Lee* v. *Comer* (1976), 224 S.E. 2d 721.

28. Wisconsin *Goller* v. *White, supra.*

The Supreme Court of Florida has not decided the issue of parental immunity. However, several appellate courts in Florida have decided the issue with conflicting results. See *Ard* v. *Ard* (Fla. App. 1981), 395 So. 2d 586; *Horton* v. *Unigard Ins. Co.* (Fla. App. 1978), 355 So. 2d 154.

The following jurisdictions continue to follow the doctrine of parental immunity:

1. Alabama, *Owens* v. *Auto Mutl. Indem. Co.* (1937), 235 Ala. 9, 177 So. 133.

2. Arkansas, *Thomas* v. *Inmon* (1980), 268 Ark. 221, 594 S.W. 2d 853.

3. Colorado, *Horton* v. *Reaves* (1974), 186 Colo. 149, 526 P. 2d 304; *Hansen* v. *Hansen* (Colo. App. 1979), 608 P. 2d 365.

4. Georgia, *Wisenbaker* v. *Zeigler* (1976), 140 Ga. App. 90, 230 S.E. 2d 97.

5. Idaho, *Pedigo* v. *Rowley, supra.*

6. Illinois, *Gerrity* v. *Beatty* (1978), 71 Ill. 2d 47, 373 N.E. 2d 1323; *Illinois Nat'l Bank & Trust Co.* v. *Turner* (1980), 83 Ill. App. 3d 234, 403 N.E. 2d 1256.

7. Indiana, *Hunter* v. *State* (1977), 172 Ind. App. 397, 360 N.E. 2d 588; *Vaughan* v. *Vaughan* (1974), 161 Ind. App. 497, 316 N.E. 2d 455.

8. Maryland, *Shell Oil Co.* v. *Ryckman* (1979), 43 Md. App. 1, 403 A. 2d 379; *Montz* v. *Mendaloff* (1978), 40 Md. App. 220, 388 A. 2d 568.

9. Mississippi, *McNeal* v. *Estate of McNeal* (1971), 254 So. 2d 521.

10. Montana, *State Farm Mutual Auto Ins. Co.* v. *Leary,* (1975), 168 Mont. 482, 544 P. 2d 444.

11. Nebraska, *Pullen* v. *Novak* (1959), 169 Neb. 211, 99 N.W. 2d 16.

12. Ohio, *Teramano* v. *Teramano* (1966), 6 Ohio St. 2d 117, 216 N.E. 2d 375.

13. Oklahoma, *Van Wart* v. *Cook* (Okla. App. 1976), 557 P. 2d 1161.

14. Oregon, *Chaffin* v. *Chaffin* (1964), 239 Ore. 374, 397 P. 2d 771.

15. Rhode Island, *Castellucci* v. *Castellucci* (1963), 96 R.I. 34, 188 A. 2d 467.

16. Tennessee, *Campbell* v. *Gruttemeyer* (1968), 222 Tenn. 133, 432 S.W. 2d 894.

17. Texas, *Felderhoff* v. *Felderhoff* (1971), 473 S.W. 2d 928.

18. Wyoming, *Oldman* v. *Bartshe* (1971), 480 P. 2d 99.

year-old child had instituted suit to recover for injuries suffered from the alleged negligence of a partnership, of which her father was a partner, in the maintenance and operation of a gasoline pump. After a review of the historical development of the rule, the court held that "[a] parent in his business or vocational capacity is not immune from a personal tort action by his unemancipated minor child." Unarticulated, but implicit in such syllabus language, is that the rule of parental immunity was in force in Ohio.

In *Teramano* v. *Teramano* (1966), 6 Ohio St. 2d 117, the issue of parental immunity was again before this court. In *Teramano,* the plaintiff was an unemancipated child who was struck in the driveway of his home by an automobile operated by his father who it was alleged was operating his automobile at a high speed and under the influence of intoxicants. The court, in denying the right of recovery, and after concluding that the father's conduct was not intentional or malicious, held the following:

"1. A parent is immune from suit by his unemancipated minor child for tort unless facts of the case are sufficient to show abandonment of the parental relationship. (*Signs* v. *Signs,* 156 Ohio St. 566, explained.)

"2. A malicious intent to injure existing in the conduct of a parent toward his minor unemancipated child evidences abandonment of the parental relationship. Malicious intent to injure in such cases may be actual or implied.

"3. Where the petition filed by an unemancipated minor against his parent, seeking damages for personal injuries, alleges that the injuries were willfully inflicted but it becomes apparent upon the opening statement of plaintiff's counsel that the acts complained of were not done with a malicious intention to injure or were not such acts as would justify a presumption of malicious intent to injure, a verdict should be directed for defendant."

The Court of Appeals below in the case *sub judice* affirmed, essentially, upon the basis that there being no abandonment in the sense of volitional action by Rose Karam in the termination of her relationship with the appellants and no evidence of malicious intent otherwise existing, the holding in *Teramano* was controlling.

Appellants essentially argue that the focus should not be on a wooden application of the concept of abandonment, as that term is defined as embracing intentional action, but rather upon the fact that when the parent is deceased, liability insurance coverage exists and all remaining family members join in the suit; thus, the basic rationale of the rule respecting disturbance of family tranquility does not exist and the parental immunity rule should not apply. Assuming, *arguendo,* there is merit in such argument, there still exists an important public policy aspect which requires consideration.

In adjudicating the issue of parental immunity, courts have frequently drawn an analogy to the doctrine of interspousal immunity in support of the rule. Although the analogy has been criticized in that the origins of the two doctrines are historically distinct, nevertheless both involve intra family litigation and rest in part upon the same ground, *i.e.,* that of public policy in the prevention of fraud and collusion.[5]

Understandably, therefore, courts in jurisdictions having in effect a doctrine of interspousal immunity have relied upon the existence of interspousal immunity to support the parental immunity doctrine. *Downs* v. *Poulin* (Me. 1966), 216 A. 2d 29; *Luster* v. *Luster* (1938), 299 Mass. 480, 13 N.E. 2d 438. By the same token, when a jurisdiction has abrogated the doctrine of interspousal immunity, courts have utilized such rejection in abrogating parental immunity upon the basis that a principal supporting underpinning, *i.e.,* fraud and collusion, having been rejected in interspousal litigation, it was equally without merit in parental immunity adjudication. *Hebel* v. *Hebel* (Alaska 1967), 435 P. 2d 8; *Gibson* v. *Gibson* (1971), 3 Cal. 3d 914, 92 Cal. Rptr. 288, 479 P. 2d 648; *Black* v. *Solmitz* (Me. 1979), 409 A. 2d 634; *Turner* v. *Turner* (Iowa 1981), 304 N.W. 2d 786;

[5] The tenor of non-syllabus language in *Signs* v. *Signs* (1952), 156 Ohio St. 566, can fairly be read to evidence a skepticism of the rationale supporting the rule of parental immunity. Indeed, language from *Signs* was utilized in *Falco* v. *Pados, supra,* in support of rejection of the parental immunity doctrine. In *Signs* not only was it stated that the general rule of interspousal immunity did not support parental immunity, the court further addressed and found unpersuasive the fraud and collusion underpinning for the rule. However, the language in *Signs,* decided in 1952, must be read in light of the strong policy position respecting fraud and collusion adopted in the other aspect of intra family tort litigation, *i.e.,* interspousal, in 1965 in *Lyons* v. *Lyons,* 2 Ohio St. 2d 243, and in the adherence to the parental immunity rule in the following year in *Teramano* v. *Teramano, supra.*

*France* v. *A.P.A. Transport Corp.* (1970), 56 N.J. 500, 267 A. 2d 490; *Plumley* v. *Klein* (1972), 388 Mich. 1, 199 N.W. 2d 169; *Guess* v. *Gulf Ins. Co., supra* (96 N.M. 27).

As noted in *Varholla* v. *Varholla* (1978), 56 Ohio St. 2d 269, 270, this court in *Lyons* v. *Lyons* (1965), 2 Ohio St. 2d 243, approved interspousal immunity with one of the three principal reasons being articulated as, "the immunity prevents fraud and collusion at the expense of tactically disadvantaged insurance companies." In *Bonkowsky* v. *Bonkowsky* (1982), 69 Ohio St. 2d 152, this court reaffirmed its adherence to the doctrine of interspousal immunity.

We view *Bonkowsky* as foreshadowing our holding herein inasmuch as we cannot logically accept as meritorious the collusion argument to support a doctrine of interspousal immunity and yet find the same argument insubstantial in child-parent litigation. This is particularly so when, as here, the surviving parent occupies the positions of plaintiff, in both a representative and individual capacity, and also of defendant in a representative capacity, and the children seeking damages are under his custody and control and dependent upon him for care and support.[6]

For the above reasons, we reject appellants' first proposition of law and adhere to the rule of parental immunity for negligent acts by a parent as enunciated in *Teramano* v. *Teramano, supra.*

As a second proposition of law appellants assert the court erred in sustaining a motion to dismiss the two insurance companies. We agree that this was error, but not prejudicial. Although the general rule is that no direct action is permissible by an injured party against a tortfeasor's liability insurance company, the right of action against the company arising under R. C. 3929.20 only after the tortfeasor has obtained a judgment against the insured which is unpaid, this court enunciated an exception in the second paragraph of the syllabus in *Heuser* v. *Crum* (1972), 31 Ohio St. 2d 90, as follows:

"Where it is alleged in an action for bodily injuries that

---

[6] The Supreme Court of Kansas in *Nocktonick* v. *Nocktonick, supra,* abrogated the doctrine of parental immunity but retained interspousal immunity. We view such result as paradoxical in the same vein as Prosser on Torts (4 Ed.), 865, fn. 75, which describes as the "height of inconsistency" the holdings by some courts in permitting action by the wife but denying it to the child.

such injuries were proximately caused by the negligence of a decedent and that he had a policy of insurance insuring him against liability for such negligence, and it does not appear that any other claims covered by such insurance have been asserted, *such action may be brought against the executor or administrator of such decedent, and decedent's liability insurer,* at any time within the statute of limitations on such actions without presenting a claim against the estate within the time specified in R. C. 2117.06 or R. C. 2117.07, and timely service of summons upon the insurer-defendant is sufficient to commence the action." (Emphasis added.)

Under the facts herein, the exception is applicable and joinder proper. However, inasmuch as we have rejected appellants' first proposition of law, the error is necessarily harmless.

Accordingly, the judgment of the Court of Appeals, is affirmed.

*Judgment affirmed.*

VICTOR, LOCHER, HOLMES and KRUPANSKY, JJ., concur.

SWEENEY, Acting C. J., and C. BROWN, J., concur in part and dissent in part.

STEPHENSON, J., of the Fourth Appellate District, sitting for CELEBREZZE, C. J.

VICTOR, J., of the Ninth Appellate District, sitting for W. BROWN.

CLIFFORD F. BROWN, J., concurring in part and dissenting in part. The reasons given by this court in this case to support the parental immunity for negligent acts by a parent toward a child, namely, "that of public policy in the prevention of fraud and collusion" and preservation of domestic peace, harmony and tranquility, are the same flimsy rationalizing and irrelevant nonsense used to give continuing life to the interspousal immunity doctrine in *Bonkowsky* v. *Bonkowsky* (1982), 69 Ohio St. 2d 152. Just as Justice William B. Brown in his dissents in *Varholla* v. *Varholla* (1978), 56 Ohio St. 2d 269, 271-275, and *Bonkowsky, supra,* at pages 156-162, recognized the need for eliminating spousal immunity, the urgency for the death of the parental immunity rule is equally compelling. This

clarion call has been recognized by more than half of our states. See, *e.g.*, *Sisler* v. *Seeberger* (1979), 23 Wash. App. 612, 596 P. 2d 1362; *Lee* v. *Comer* (W. Va. 1976), 224 S.E. 2d 271; *Gibson* v. *Gibson* (1971), 3 Cal. 3d 914, 92 Cal. Rptr. 288, 479 P. 2d 648; *Streenz* v. *Streenz* (1970), 106 Ariz. 86, 471 P. 2d 282; *Badigian* v. *Badigian* (1961), 9 N.Y. 2d 472, 215 N.Y. Supp. 2d 35; 41 A.L.R. 3d 964-970, Section 13; see footnote 4 herein.[7]

Nothing in the record before us, nor any statistical data dehors the record, supports the finding of this court in this case or in *Teramano* v. *Teramano* (1966), 6 Ohio St. 2d 117, that family tranquility is preserved or that fraud is prevented by the parental immunity defense which unjustly shackles the innocent injured victims, the Karam plaintiffs, permitting them to suffer a wrong without a remedy. Such a judicial finding is from the dream world, unrealistic and pure drivel. One might just as validly speculate that the parental immunity rule exists to pull the chestnuts out of the fire for the liability insurance companies by reducing in small measure their total insurance benefits payable, expecting and hoping thereby that insurance premiums will be reduced slightly for all policy holders, including the judges who sustain this ridiculous immunity rule which serves no good and promotes nothing but evil. This rule is solely a product of judicial selfishness, entirely devoid of compassion and a sense of justice.

The rationale that barring the minor Karam plaintiffs from pursuing a tort claim sounding in negligence against a deceased parent's estate will somehow promote family harmony and felicity and preserve parental care, discipline and control completely escapes me.[8] Since the tortfeasor parent

---

[7] Footnote 4 recognizes 28 jurisdictions have refused to adopt or, if adopted, have abrogated in whole or in part the parental immunity doctrine, whereas only 18 jurisdictions follow the parental immunity doctrine. The former category of 28 states will increase in number while the latter category will correspondingly decrease as judicial wisdom spreads. We should not stand in line until 49 states have abrogated the immunity doctrine before we join the union of judicial progress and improvement of the quality of justice. It would be a logical and easy short step now, basing abrogation of the rule on the excellent rationale of this court in *Signs* v. *Signs* (1952), 156 Ohio St. 566, where we held that a parent in his business or vocational capacity is not immune from a personal tort action by his unemancipated minor child.

[8] As the majority opinion accurately observes, the opinion by Judge Woods in *Hewlett* v. *George* (1891), 68 Miss. 703, 711, 9 So. 885, asserts the parental immunity

named as defendant in the legal action is now deceased, such action can have no effect whatever on the discharge of the sur-

rule's purpose is to promote domestic peace and harmony. However, no empirical data has ever been adduced in any case that immunity fulfills such a purpose. Just because one Judge Woods in 1891 in Mississippi pronounced an unproven platitude and thereby judicially created an immunity rule does not justify this court or any of the 17 jurisdictions clinging desperately to this shrinking minority view in continuing to parrot such balderdash.

Similarly, the bald averment that immunity prevents fraud and collusion is not uncontradicted truth. We should recognize that fraud and collusion can be prevented in any action by an unemancipated child against his parent, as did the learned jurists in *Sorensen* v. *Sorensen* (1975), 369 Mass. 350, 365, 339 N.E. 2d 907:

"The existence of collusion and lack of cooperation is not difficult to establish in the ordinary motor vehicle accident case. Prompt, effective insurance company investigation and the requirement of prompt reports of accidents to the registry of motor vehicles and to the insurer quickly establish the essential facts. Normally, any attempt at deviation from the facts by the insured will be speedily evident and will warrant disclaimer by the insurance carrier. The parent is usually represented by counsel provided by the insurance company. Such counsel is ever alert to protect the interests of the insurance company and ready to expose any attempts at collusive and fraudulent conduct. Any overt attempt at collusion constitutes a criminal offense and will be punishable as such.

"Some collusive claims may succeed. But this does not justify the formulation of a rule of blanket denial of recovery for all minors. It would be unjust to bar arbitrarily the claims of injured minors deserving of relief solely because some cases may involve possible collusion between two parties."

The cogent dissent of Justice Mays in *Thomas* v. *Inmon* (1980), 268 Ark. 221, 224-225, 594 S.W. 2d 853, disposes of both the fraud and collusion rationalization and the parental harmony canard as follows:

"Although a tort action by a child against his parent may suggest family disharmony, generally the real party in interest is the insurance company which provides financial protection to the parent. Just as most tort suits are not undertaken in the absence of a deep pocket, few minor children would sue their parents in the absence of insurance. Moreover, no greater disruption of family harmony is caused by a suit pitting a child against a parent than a suit pitting brother against sister or husband against wife which is allowed. *Leach* v. *Leach*, 227 Ark. 559, 300 S.W. 2d 15 (1957). As to the consideration of fraud or collusion, no greater danger of collusion exists in child-parent suits than in other suits among family members. Although the possibility of fraud or perjury exists to some degree in all cases, we do not abolish a cause of action solely because of that danger. In short, the likelihood of family discord or collusive suits is not significantly enhanced by permitting child-parent suits and certainly does not justify abolishing an unemancipated child's right to be made financially whole when wrongfully injured."

Since this *Karam* case involves liability insurance held by the decedent tortfeasor, the rationale expressed in *Streenz* v. *Streenz, supra,* at 88, is applicable:

"* * * Although we agree with *Hebel, supra,* that 'the existence of liability insurance does not create liability' where none existed before, we think the widespread

viving parent's responsibilities, nor can it disrupt the harmony of the surviving family members. Rather, a successful suit by the Karam children against the deceased parent's administrator, the children thereafter obtaining the liability insurance benefits to satisfy such claims, would ease the financial burdens caused by the bodily injuries, thereby promoting family harmony. When the reasons for a rule cease the rule should cease. Therefore parental immunity should be abrogated.

Even if Ohio preserves the parental immunity rule generally, at a minimum, an exception should be carved in this case, so that parental immunity is rendered inapplicable by the death of the parent. This exception has been established in many other jurisdictions. *Union Bank & Trust Co.* v. *First Nat. Bank & Trust Co.* (C.A. 5, 1966), 362 F. 2d 311, affirmed following remand, 396 F. 2d 795; *Thurman* v. *Etherton* (Ky. 1970), 459 S.W. 2d 402; *Brennecke* v. *Kilpatrick* (Mo. 1960), 336 S.W. 2d 68; *Dean* v. *Smith* (1965), 106 N.H. 314, 211 A. 2d 410; *Palcsey* v. *Tepper* (1962), 71 N.J. Super 294, 176 A. 2d

---

prevalence of such insurance is a proper element to consider. Where insurance is available to compensate the child for his injuries, the possibility of disruption of family unity and peace is negligible. * * *"

See, also, 1 Harper & James, The Law of Torts 649, Section 8.11; Prosser on Torts (4 Ed.), 868, Section 122; McCurdy, Torts Between Parent and Child, 5 Vill. L. Rev. 521, 546; Comment, Tort Actions Between Members of the Family—Husband and Wife—Parent & Child, 26 Mo. L. Rev. 152, 191.

To retain in Ohio a parental immunity rule because it was pronounced without thorough analysis of its widespread application and consequences by an obscure judge in Mississippi in 1891, and then spread as gospel truth without further sound analysis in a minority of jurisdictions, does a disservice to the cause of justice.

Moreover, *Hewlett* was an action by a minor plaintiff against her mother for " 'wilfully, illegally, and maliciously' securing her imprisonment in an insane asylum in order to obtain her property," see *Sorensen* v. *Sorensen, supra,* at 354. Unlike the present case, the wrongful act complained of involved the reasonable exercise of parental authority over the child, and ordinary parental discretion with respect to provisions for the care and necessities of the child. *Hewlett* and its progeny, at a minimum, should be confined to the same or similar situations. See, *e.g., Horn* v. *Horn* (Ky. 1982), 50 U.S.L.W. 2612; *Goller* v. *White* (1963), 20 Wis. 2d 402, 122 N.W. 2d 193.

Lastly, the suggestion of this court, see last paragraph of footnote 3, that abrogation of the parental immunity rule "should emanate from the General Assembly" is an abdication of the judicial function. It is an uncourageous passing of the judicial buck. What the judges and courts can create, judges and courts can eradicate. That is simple law and logic with its underpinning in common sense.

818; *Parks* v. *Parks* (1957), 390 Pa. 287, 135 A. 2d 65; 41 A.L.R. 3d, 944-946.

Nor is the argument convincing that such suits result from collusion and are a source of fraud on the courts. Modern civil procedure and discovery tools available to both the courts and the "tactically disadvantaged insurance companies" will easily meet the challenge of spurious or fraudulent claims. See *Bonkowsky, supra,* at page 163.

As it did in *Bonkowsky,* this court again misses an opportunity to abrogate an outmoded immunity doctrine. While respecting the principle of *stare decisis,* the need for modification and modernization in the law is equally compelling. "Modification implies growth. It is the life of the law." *Washington* v. *Dawson & Co.* (1924), 264 U. S. 219, 236. (Brandeis, J., dissenting opinion.)

Recognizing that where liability insurance exists, the domestic tranquility argument has no validity, and being confident that our adversary system is capable of rooting out fraud and collusion, I would join the ever increasing number of enlightened jurisdictions and overturn the judicially created shibboleth of "parental immunity" to give injured minors their rightful day in court. As I did in *Bonkowsky,* I dissent from a decision which does not serve the purpose of justice.

I concur in that part of the judgment of this court affirming the dismissal by the trial court of the two insurance companies as defendants.

SWEENEY, Acting C. J., concurs in the foregoing concurring and dissenting opinion.